THE NEW YORK EXCHANGE COMPANY, Respondent, *v.* DAVID R. DE WOLF, Appellant.

Where subscriptions are made under an agreement that they are not to be binding unless a specified sum is subscribed, it is essential that there should be no conditions as to the liability of any of the subscribers not applicable to all.

Confidential subscriptions, made for the purpose of making up the required sum, are a fraud upon the other subscribers; and should not be treated as valid subscriptions.

'Where, by deducting such confidential subscriptions, the required sum is not subscribed, the contract of subscription does not become operative, so as to bind the subscribers.

Parol evidence is admissible to show that certain of the subscriptions were confidential in character, and therefore fraudulent.

THE facts will sufficiently appear in the opinion of DA-VIES, J.

*J. A. Ruthven*, for the appellant.

*J. E. Parsons*, for the respondent.

DAVIES, J. This is an action upon a promissory note, made by the defendant, dated November 8, 1855, payable six months after date, to the order of the Atlas Mutual Insurance Company, for the sum of five hundred dollars, for value

received.   On the 1st of February, 1856, the Atlas Insurance Company was indebted to the plaintiff for a quarter's rent due on that day, amounting to the sum of $1,125, which not being paid, on the 1st of March following, the company transferred to the plaintiff three notes held by it, among which was the note of the defendant, amounting, in the whole, to $1,250, "the sum to be credited to the account of the Atlas Mutual Insurance Company, against the bill of this company for rent," as per the receipt of the plaintiff given on that day, on receipt of said notes.   The note of the defendant was indorsed by the president of the Atlas Mutual Insurance Company.   This company was incorporated by special act, to transact the business of insurance on the mutual principle. (Laws of 1843, ch. 92, p. 67.)   Certain sections of the act, to incorporate the Atlantic Insurance Company, passed April 11, 1842 (Laws of 1842, ch. 217), were incorporated into and made part of the charter of the Atlas Insurance Company.   Among the sections so adopted was the 12th section of the act of incorporation of the Atlantic Company, which is in these words: "The company, for the better security of its dealers, may receive notes for premiums in advance of persons intending to receive its policies, and may negotiate such notes for the purpose of paying claims, or otherwise, in the course of its business."

On the 12th of October, 1855, a subscription was started for the benefit of said company, bearing date on that day, in the words following: "We the subscribers, hereby agree to give our notes for the amount opposite our names, at four months, in advance of premiums to the Atlas Mutual Insurance Company; notes to be given when $40,000 is subscribed." Several persons affixed their names to this subscription, amounting in all to the sum of $40,000.   At a meeting of the trustees of the company, held on the 30th of October, 1855, the following resolution was adopted: "That any arrangement made by the finance committee in paying, or arranging for funds to pay the pressing liabilities of the company, and to sustain the institution till other means can be provided, if they shall make themselves or their friends

personally liable, the same shall be considered and treated as confidential in any event, equal in all respects to the $40,000 already subscribed by the friends of the company for its relief." On the 8th of November, 1855, certain trustees of the company entered into the following engagement: "The trustees of the Atlas Mutual Insurance Company, in order to show their desire and determination to place the company in an independent position, do subscribe the amount set opposite their names, on the same conditions set forth in the resolution of the board of this date, to be paid in cash or notes at thirty, sixty, ninety days, or four months, provided that the amount of three hundred thousand dollars is subscribed *under that resolution*." Then follow the names of thirteen trustees, Mr. Ambrose Snow using his firm name of Snow & Burgess, and the total amount of the engagements was $50,000. The resolution referred to, adopted by the board of trustees on that day, was in these words: "On motion, it was resolved that a subscription in the sum of $400,000 in premium notes to be written against, be obtained, subscriptions to be binding when $300,000 is subscribed, including the $40,000 already subscribed."

The trustees then prepared subscription books, containing, first, the engagement of the trustees to subscribe to the extent of $50,000, of November 8, 1855; then the subscription of the $40,000, of October 12, 1855; then a subscription in these words, bearing date November 8, 1855: "We, the subscribers hereto, agree to give to the Atlas Mutual Insurance Company our notes, in advance of premiums of insurance at six and twelve months, in equal amounts, for the sums set opposite our names respectively, it being understood that, in consideration thereof, the subscribers are to be allowed by the company at the maturity of their notes, five per cent on the amount thereof. This subscription is towards the $400,000 subscription, authorized by a resolution of the board of trustees of this date, and is not binding until the sum of $300,000 is subscribed." To this subscription, the persons engaging to take the $50,000, in pursuance of the engagement of November 8, 1855, subscribed to the extent of that amount;

and others subscribed, among whom was the defendant, in various sums, to the amount of $210,000 and a fraction over, so that the subscriptions made on and after the 8th day of November amounted to the sum of $260,000, and including that made on the 12th of October, of $40,000, the total amount was $300,000 and over. On the 30th of November, 1855, at a meeting of the trustees of the company, it was declared, that it being understood that $300,000 is now subscribed under the resolution of the board of November 8th, it was therefore resolved, that the officers commence at once to collect the notes to that amount, and proceed in liquidating the liabilities of the company therewith. Also resolved that the effort be continued to obtain the other one hundred thousand dollars as soon as possible. It was proven on the part of the defendant, that, at the time he gave his note, it was represented to him by Osgood, the president of the company, that the $300,000 had been subscribed. The minutes of the meeting of the trustees of October 30, 1855, were offered in evidence by the defendant's counsel and objected to by plaintiff, and the same were excluded, and the defendant's counsel excepted. Charles W. Ogden, a witness on the part of the defendant, testified that the subscription of $5,000 in the name of the International Insurance Company, was subscribed by him, and that there was no resolution of the board of directors authorizing the subscription. The witness was then asked, at the time of such subscription was there any arrangement made with you, by the Atlas Mutual Insurance Company, in reference to such subscription and the notes to be given under that subscription, and, if so, state what it was? The counsel for the plaintiff objected to the question, and the same was excluded by the judge, and the defendant excepted.

Richard Bainbridge, a witness on the part of the defendant, testified that he subscribed to the subscription of the 8th of November. He was then asked to state, whether any, and, if so, what inducements were offered you to induce you to make such subscription? This was objected to by the plain-

tiff's counsel, and the objection was sustained by the judge, and the defendant's counsel excepted.

Augustus W. Whipple, a witness on the part of the defendant, testified that he was the marine agent of the Philadelphia Insurance Company, and, as such, subscribed $2,000; that there was no authority of the board of directors of that company to subscribe. He was then asked, if there was any arrangement between him and the Atlas Mutual Insurance Company, in reference to that subscription; if so, to state what it was. This was objected to by the plaintiff's counsel, and the objection sustained, and the defendant's counsel excepted. These objections were sustained, on the ground that the questions put sought to alter the subscription by proof of a parol arrangement.

The judge was requested to charge the jury, that the $40,000 subscription, made on the 12th of October, was not to be included in and taken as part of the $300,000, which, by the terms of the subscription of November 8th, was to have been subscribed before that subscription was to be binding.

2. That the subscription of the insurance companies, to the subscription of November 8th, were void, because such companies had no power or authority to take stock in said Atlas Insurance Company.

3. That even if such companies had power to become such subscribers, the said subscriptions were void, because not authorized by their respective boards of directors. The judge refused so to charge, and the defendant's counsel excepted. The jury found a verdict for the plaintiff for $593.55, the amount of the note and interest, and judgment thereon was affirmed at the General Term.

The evidence conclusively establishes that the total amount of all the subscriptions, including those of the $40,000 subscribed on the 12th of October, amounted to a fraction over the sum of $300,000.

By the terms of the subscription of November 8th, that was not to be binding until the sum of $300,000, towards and as a part of the subscription of $400,000, authorized by

the resolution of the board of trustees of that date, should be subscribed. It is true, that the resolution of the board of trustees declared that the $40,000 already subscribed was to be deemed and taken as part of the $300,000, but such was not the terms of the subscription, and it did not appear that the defendant had any notice of that resolution, or ever assented to its terms. By the terms of his subscription, the notes were agreed to be given at six and twelve months in equal amounts, and it was expressly declared that that subscription was towards the $400,000 subscription, authorized by a resolution of the board of trustees on the 8th day of November, and the same, that is, the subscriptions to make up said sum of $400,000, were not to be binding until the sum of $300,000, as part and parcel of said sum of $400,000 was subscribed. It is true, that such subscription was preceded by the subscription of October 12, which showed on its face that on that day $40,000, the amount stated in that subscription, had been subscribed in notes at four months. There is nothing on the subscription papers, carrying the slightest intimation that the $40,000 was to form any part of the $400,000 authorized to be subscribed by the resolution of November 8. It is apparent it was placed at the head of the subscription list, to inform the subscribers that previous to the date of the resolution of November 8th, that sum had already been obtained in advance premium notes, and as inducements to fill up the subscription of $400,000, authorized by the resolution of November 8th. The subscription declares on its face that the resolution of November 8th called for a subscription of $400,000, and the terms clearly import that it was in addition to the subscription theretofore made. The agreement of certain trustees under date of November 8, to subscribe to the extent of $50,000, may be regarded as made with reference to the subscription of $400,000, called for by the resolution of that date. It is clear that it was so regarded, as it is seen by reference to such subscription, that that agreement was supposed to have been fulfilled by the parties to it subscribing to the subscription of $400,000 the said sum of $50,000.

If this construction of the subscription and agreement of the defendant is correct, it follows, indisputably, that the subscription of $40,000, made on the 12th of October, formed no part of the subscription of $400,000 authorized by the resolution of November 8, and could not rightfully be estimated as part of the subscription of $300,000 required to make that subscription binding. Another circumstance of controlling influence, as sustaining this view, is the action of the board of trustees on the 30th of October. In the resolution adopted that day, it is declared that the $40,000 had already been subscribed by the friends of the company for its relief. The trustees also declared that said sum of $40,000 had been subscribed under an arrangement that the same was to be treated and considered as confidential. It is true that the judge excluded this resolution or declaration of the trustees on the trial; but in this he clearly erred. It should have been admitted, for, 1st. It pointed distinctly to the engagement, entered into by certain of the trustees, of November 8, by which they agreed to advance the sum of $50,000, in cash and notes, at thirty, sixty, ninety days, or four months, and which was consummated by these parties subsequently signing the subscription of November 8 to that amount. 2d. It conclusively showed that the subscription of $40,000 was made under an agreement with the company that the same was to be considered and treated as confidential. Assuming, for the disposition of this question, that the present plaintiffs stand in no better position than the Atlas Insurance Company, and that any defense is available to this defendant in this action which would have been if the note had never been transferred by that company, how would the question present itself? The defendant's subscription was not to be binding until $300,000 had been subscribed. The plaintiffs contend that such condition precedent had been fulfilled, and adduce this $40,000 and this $50,000 subscriptions as evidence, and they, with the $210,000 of other subscriptions, show the full amount called for. To rebut this state of facts, the defendant desires to show that these subscriptions were made under such arrangements as forbid their

being availed of for such a purpose.  To lay the foundation for such testimony, he offers the book of minutes of the corporation to show under what circumstances and agreements these two sums were procured.  That they were competent testimony, is abundantly sustained by authority. (Phil. Ev., Edwards' ed., vol. 2, p. 295; *Stewart* v. *Trustees of Hamilton College*, 2 Denio, 403.)

The defendant's subscription was made upon the condition that it should not be binding upon the subscribers unless the aggregate of their subscriptions should amount to at least $300,000.  The plaintiff properly assumed the burthen of showing that this condition had been complied with, and to this end he found it necessary to include the $40,000 subscription of October 12, as forming part of the $300,000 to be subscribed under the subscription of November 8.  The difficulties which are deemed insurmountable, in including this subscription for such a purpose, have already been adverted to; but assuming it may properly be so considered, then the resolution shows, as did the resolution of the trustees of Hamilton College (cited *supra*), that all the subscriptions to the fund of $300,000 did not stand upon the same footing.  This resolution, as already stated, showed, I think, that the subscribers, under the agreement of November 8, who subscribed $50,000 in pursuance thereof, were to be considered and treated as confidential, on the same terms as the subscribers to the $40,000 confidential subscription.  In the case of Hamilton College, the terms of the subscription were, that the subscribers were not to be holden to pay the sums respectively subscribed by them, unless the aggregate of the subscriptions should, by the 1st of July, 1834, amount to $50,000.  It was proven on the trial that Stewart, the defendant, had subscribed the sum of $800, and that the total amount of the subscriptions, on the 30th June, 1834, was $50,460.39; that, to make up this sum, $700 were subscribed by unincorporated benevolent associations, $2,000 by married women, $2,000 payable in land, and $500 subscribed by the president of the college, which the board of trustees had paid out of the general funds of the college.  To meet this con-

ceded deficiency in the total amount necessary to make the subscriptions binding, the college produced the agreement of fourteen persons, of undoubted respectability, dated 19th June, 1834, by which they undertook to pay to the corporation the amount of any deficiency in the subscriptions to the fund of $50,000 which might exist on the 30th of June then next. The defendant offered in evidence, and was permitted to prove, that, on the day on which the fourteen individuals signed the undertaking, the board of trustees passed a resolution pledging itself to save harmless those persons who might pledge themselves to make good any deficiency which might be found to exist on the last day of June then instant. The chancellor, in delivering the opinion in the Court of Errors, remarked, that it was evident from the testimony that many of the subscriptions were from those not competent to contract, and that, of course, they must be laid out of the question. A resort was therefore necessary to the agreement of June 19, to make up the required sum to make the subscription binding. In reference to that, the chancellor observed that it was apparently a subscription, upon the same terms of equality and mutuality as the subscriptions of the other persons. But he held that the legal effect of the subscription, apparent on its face, was entirely changed by the resolution of the board, and that the signers to it were entirely mistaken in supposing that their subscription was a compliance with the condition of the agreement that the total of the subscriptions should amount to the sum of $50,000 by the 1st day of July. He said: "The essence of every agreement of this kind is, that there should be perfect equality among the subscribers as to the nature and extent of their respective liabilities for the several sums subscribed by them respectively. To have made this general subscription valid, so as to fill up the sum of subscriptions and contributions to the amount of $50,000, within the terms of the agreement, it should have been an absolute donation of the amount of the deficiency, to be paid at the same time as the other subscriptions, and no part of it to be restored or refunded to them upon any contingency or in any event, other than such as was common to the sub-

scriptions of all the other subscribers." The court decided that the general subscription of the 19th of June, 1834, was entirely invalid as a compliance with the terms upon which the subscriptions were to become payable, and that Stewart never became liable upon his subscription. The doctrine of this case is apparent in reference to the liability of this defendant. The agreement in the resolution incontrovertibly shows that the $40,000 subscription was confidential; and if it is to be taken as a part of the $300,000 needful to be subscribed before any portion of the subscriptions under the authority of the resolution of November 8 should become binding, it cannot be invoked for that purpose. The subscriptions for such sum of $40,000 were not made upon the same terms as the defendant's subscription. The same vice inhered in that subscription as did in that of the fourteen persons in the Stewart case; and it follows that the defendant's subscription was not binding upon him, the condition precedent to that liability not having been fulfilled.

The same considerations apply with equal force to the subscriptions of the individuals who signed the agreement of November 8 to subscribe to the subscription authorized that day to the extent of $50,000. I cannot read the resolution of October 30, and the agreement of November 8, in any other light than that the sum mentioned was to be considered and treated as confidential in any event.

If these views are correct, it necessarily follows that the fundamental condition of the defendant's liability never was performed.

It remains to consider the rulings of the judge, excluding the testimony proposed to be given by Ogden, Bainbridge and Whipple. The questions put to these witnesses pointed to the fact that arrangements had been made with them touching their subscriptions, and the notes given therefor. That such inquiries were legitimate cannot, I think, be denied. Arrangements were authorized to be made by the resolution of October 30th, and I cannot see upon what ground it might not have been shown that the subscriptions and notes of these witnesses had been taken and

given under the authorized arrangement to make them confidential in any event. This evidence was excluded by the learned judge upon the theory that the contract of the defendant was sought to be varied or altered by parol. But this was not the ground upon which it was offered, but to show the fraud which had been practiced upon the defendant. By the terms of his contract, his subscription was not to be binding unless the sum of $300,000 was subscribed. The fair interpretation and meaning of this, are, that subscriptions to this amount should be subscribed on the same terms as the subscription of the defendant, and that all the subscriptions making up this amount should be on terms of perfect equality. If any of them were made on different terms, then a fraud was practiced on the defendant, and this rendered his engagement void. The resolution of October 30 was an authorization by the corporation to its agents to make arrangements with subscribers, whereby certain subscriptions were to be confidential; that is upon different terms than the subscription of the defendant. The defendant had a clear right to show what arrangements, if any, had been made with the parties giving their notes, or any of them, and if they had been of the character indicated by the resolution of October 30, then it is equally clear a fraud had been practiced upon the defendant, which absolved him from any liability on his subscription. A similar rule of evidence has been recognized, in reference to agreements for procuring the execution of a composition deed. When there is in a composition deed an express agreement between the parties thereto to discharge the debtor upon receiving a ratable proportion of their respective debts, any private agreement or understanding between the debtor and any particular creditor, that the latter shall at any time, or in any contingency, receive a greater sum than the amount of his debt as specified in the composition deed, is held to be void as a fraud upon other creditors. (1 Anst., 202; 3 id., 910.) Parol evidence may be given to show the fraud in obtaining the notes or subscriptions, and such evidence, in no just or proper sense, varies or alters the contract of the defendant. It

shows, if anything, that no contract was ever entered into. (*Chester* v. *Bank of Kingston*, 16 N. Y., 336.) The plaintiff is not a *bona fide* holder of the defendant's note, and he is not therefore precluded from availing himself of his defense in this action. (*Coddington* v. *Bay*, 20 Johns., 637; *Rosa* v. *Brotherson*, 10 Wend., 86; *Stalker* v. *McDonald*, 6 Hill, 93; *Young* v. *Lee*, 2 Kern., 551; *McBride* v. *The Farmers' Bank*, 26 N. Y., 450.) The defendant can therefore avail himself of every defense which he could have done if the suit had been in the name and for the benefit of the Atlas Mutual Insurance Company. It is well settled law in this State, upon the facts proven on the trial, or which were offered to be proven, and improperly excluded, that the company could not recover upon this note. If the company could not maintain an action upon it, it follows conclusively that the present plaintiffs cannot.

The judgment should be reversed and a new trial ordered, costs to abide the event.

All the judges concurring,

Judgment reversed, and a new trial ordered.