EDWIN BYLES AND EDWIN J. PHELPS, ASSIGNEES OF
KELLOGG, SAWYER & CO., v. FLORENCE V. ROWE.

[See 54 Mich. 206.]

*Assignment for benefit of creditors—Dissolution of attachment—
Equity—Bill by assignees to .set aside execution lien.*

1. A creditor attached the real estate of an insolvent firm, and three
days afterwards the debtors made a general assignment for the
benefit of their creditors. The assignees applied for a dissolu-
tion of the attachment on the ground of the *falsity* of the
affidavit therefor, so far as it averred a *cause* for the issuance of
the writ, which application was granted by the circuit judge.
The order of dissolution was quashed in the appellate court for
want of jurisdiction in the judge to make it in behalf of such
assignees. [See *Rowe v. Kellogg,* 54 Mich. 206.] The suit pro-
ceeded to judgment, on which an execution was issued, and
levied on the attached property; whereupon the assignees filed a
bill to set aside the lien as fraudulently obtained, and also
averring the absence of a remedy at law. The circuit court
granted the relief prayed for, from which decree the attaching
creditor appealed; which decree was affirmed by an equal
division of the Court, *nothing being decided.*

2. SHERWOOD, J., filed an opinion, holding that the equity court
has jurisdiction to declare the attachment lien void by reason of
the fraud perpetrated in obtaining it, and remove the cloud from
the title of the assignees to the assigned property.

3. CHAMPLIN, J., filed an opinion, concurring in affirmance on the
ground that, *upon the facts 'in the case,* the equity court will
grant the relief prayed for, to enforce the *trust* under the as-
signment, and, by preventing the fraud complained of, secure a
ratably equal distribution of the property among the creditors.

4. CAMPBELL, C. J., denies the jurisdiction of equity to interfere,
for reasons stated in his opinion.

5. MORSE, J., reserves his opinion as to the jurisdiction of the
equity court, and holds that the decree below is *wrong on the
merits.*

Appeal from Kalamazoo. (Mills, J.) Argued November
17, 1886. Decided January 27, 1887.

Bill by assignees to remove attachment and execution liens alleged to have been fraudulently obtained. Attaching creditor appeals. Decree granting relief prayed for affirmed by a divided Court. The facts are fully stated in the opinions.

*Edwards & Stewart*, for complainants.

[For authorities cited, see opinion of SHERWOOD, J.—REPORTER.]

*Howard & Roos*, for defendant and appellant.

[No authorities cited.—REPORTER.]

SHERWOOD, J.  The complainants file their bill, as assignees of Kellogg, Sawyer & Co., to set aside attachment and execution levies upon real estate described in the bill, and for an injunction preventing a sale of the property.

The attachment proceedings were commenced on the sixth day of November, 1883. The suit was prosecuted to judgment, and an execution was issued and levied upon the attached property.

On the ninth day of November, 1883, Kellogg, Sawyer & Co. made a general assignment of all their property, for the benefit of their creditors, to the complainants. The lands attached were not only those included in the assignment, but also other lands which were not so assigned, but were claimed to be owned by Mrs. Sarah B. Kellogg, and occupied by her and her husband, Joseph E. Kellogg, as a homestead.

In February, 1884, two petitions were filed to dissolve the attachment,—one by the assignees, to remove it from the assigned property, and the other by Joseph E. Kellogg, to have it set aside as to his residence, which belonged to his wife and was occupied by the family. The only ground for suing out the writ of attachment, stated in the affidavit, was

the belief, unsupported by any facts averred, that defendants " are about to assign and dispose of their property with intent to defraud their creditors."

These were heard before the circuit judge, who found as a fact that there was no showing which justified suing out the writ of attachment, and dissolved the same in both cases.

Mrs. Rowe removed the cause into this Court by writ of *certiorari.* We then held that the learned circuit judge " was entirely correct in his inferences, and the plaintiff's case does not appear to be meritorious," and affirmed the decision of the circuit judge in the case of Joseph E. Kellogg; but, as regards the case of the assignees, Mr. Justice CAMP-BELL in his opinion says:

" It is certainly desirable that those who represent creditors, as these assignees do, should have some expeditious and simple way of getting rid of unjust seizures, but we cannot see how the statutory remedy can be made to reach their equities. So far as they are concerned, we are compelled to hold that the judge had no jurisdiction, as judge out of court, to give them relief."

The Court quashed the order in that case, but without prejudice to any other mode of redress. We further decided, in the case of the assignees, that the equities were clearly in their favor, and that we should have hesitated allowing the *certiorari,* and that we were not then prepared to say the circuit court may not have some power to protect the assignees against such seizure. *Rowe v. Kellogg,* 54 Mich. 206.

The levy under the execution was made on the twenty-sixth day of May, 1884, and the bill in this case was filed on the fifteenth day of August following.

After setting out the trust capacity in which complainants act for Kellogg, Sawyer & Co., giving a statement of the firm's liabilities and assets, and the fact that the defendant is a creditor of the firm, and that her husband acted as her agent in the management of her claim, the bill then states the legal proceedings taken to collect her claim, the com-

mencement of the suit by attachment, and the facts alleged in the affidavit made by the defendant to obtain the writ, and avers that those allegations are false, and were known to be so when the affiant made them, and that by such false statements, and procuring the attachment issued upon such false affidavit upon property not belonging to Kellogg, Sawyer & Co., but upon the property of the individual members of said firm, a fraud was committed upon the rights of complainants, and upon the court.

The complainants further aver in their bill that the attachment lien in favor of the defendant upon said real estate is wholly without equity, and a fraud upon them and the other creditors whom they represent, both joint and individual; that it is the intent of the defendant to enforce said attachment lien against the property levied upon, and thereby collect her claim in full if the same can be realized from a forced sale of the property in the execution levied thereon, and which the defendant caused to be issued and procured to be levied for the purpose of continuing and enforcing the attachment lien; that, by means of legal process, fraudulently and by imposition obtained from the court, the said defendant is about to cause the property in question to be advertised and sold upon the said execution levy, to the great injury of the complainants and all other creditors; and that the lien obtained under the levies upon the attachment and execution are void, and a cloud upon the title to the property they hold in trust, and which it is their duty as assignees to procure to be removed.

The defendant in her answer admits the legal proceedings taken as charged, but denies any fraud in the institution of the suit, or any intent to defraud in the prosecution of the suit to judgment, or in her efforts to collect said judgment after it was obtained. Defendant admits making the statements contained in the affidavit as charged, and avers she had good reason for making them. She denies that her lien

under the attachment is without equity, or a fraud upon complainants' rights, or void, or a cloud upon complainants' title. Defendant further admits that it is her intention to enforce her claim against the lands attached, under the liens she has obtained, and that the levy under the execution is only a continuance of the attachment lien.

Defendant further insists in her defense that any rights which complainants have in the real estate are subsequent to those of defendant, and subject thereto, and that complainants have no right in a court of equity to litigate the matters contained in their bill, and further claims that a court of equity has no jurisdiction to dissolve an attachment levied upon real estate; that the issuing, levy, and dissolution of attachments are all matters resting upon statute, and no authority is given to a court of equity to interfere.

The answer also prays the benefit of a demurrer.

The proofs in the case were taken in open court before Judge Mills, who upon the hearing of the cause rendered a decree, which, after referring to the real estate to be affected thereby, and which was attached, and finding that complainants hold the legal title thereto by virtue of the assignment, proceeds as follows:

"And all of said real estate hereinbefore described having been levied upon by a writ of execution by the sheriff of the county of Kalamazoo, issued at the instance of the plaintiff in said attachment suit, the defendant herein, on the judgment rendered in the said attachment suit, and said complainants, at the time of the filing of their said bill, being in possession of said premises as assignees of said Kellogg, Sawyer & Co.; it is ordered, adjudged, and decreed that the said defendant, Florence V. Rowe, the plaintiff in said attachment suit, had no sufficient reason in law or fact to believe that Kellogg, Sawyer & Co., the defendants in said suit, were about to dispose of their property with intent to defraud their creditors, as stated by said Florence V. Rowe in her affidavit for, and as the ground for, said attachment; and in fact said Kellogg, Sawyer & Co. were not, at the time of the making of said affidavit for said attachment, about to

dispose of their property with intent to cheat and defraud their creditors, but were about to make an assignment of all their property in trust, for the benefit of all their creditors alike, of which said plaintiff in attachment had notice from said Kellogg, Sawyer & Co.

"It is further ordered, adjudged, and decreed that the levy of said attachment, and of the execution issued upon the judgment in said suit, upon said real estate above described, was without authority of law, and without right in said Florence V. Rowe, this defendant, to proceed in such action, and the levy of said attachment and execution is fraudulent against the rights of the assignors conveying to complainants the real estate in question in trust for their creditors, and fraudulent as against the rights of the complainants as trustees, and the creditors they represent.

"And it is further ordered, adjudged, and decreed that said levy of attachment and execution upon said described lands is a cloud upon the title of the complainants thereto as said trustees, and said lien of attachment and execution in favor of defendant, Florence V. Rowe, is without equity; and it is hereby decreed that said attachment and execution levy, and lien thereof, be set aside, vacated, and held for naught, and the said lands be, and the same hereby are, free and discharged from the incumbrance thereof."

Mrs. Rowe appeals from the decree, and asks a review of the case in this Court, and her counsel insist that the decree should be reversed, and complainants' bill dismissed, upon two grounds:

"1. Because a court of equity has no jurisdiction.
"2. Because, from the evidence in the case, if a court of equity had jurisdiction, there was sufficient reason for holding the attachment good."

Upon the last proposition the record has been carefully inspected, and I have no doubt of the correctness of the finding of the circuit judge. In a case commenced by attachment, the affidavit is necessary to confer jurisdiction; and when it is made, as in this case, upon the ground that the affiant has good reason to believe, and does believe, that the defendants are about to assign their property with intent to defraud their creditors, the law requires it should be made in good faith,

and that the affiant should have good and substantial reasons.
for the belief expressed.   It is an extraordinary remedy that.
is resorted to, when the creditor is allowed, through the
agency of a court, to reach out and take control of the
property of his debtor, and incumber it to its full value, be-
fore he has established his claim against the debtor.   The
court permits the use of its process for this upon the showing
made in the affidavit, and upon the good faith of the affiant,
and assurance that the creditor can furnish good and sub-
stantial reasons for the statements made in the affidavit.

This suit is the second time the defendant has been asked
to furnish the reasons for her belief stated in the affidavit,
and the evidence of her good faith.

In the first instance neither the circuit judge nor this.
Court could find any sufficient reasons for the statements
made, nor the necessary facts and circumstances to show
good faith.

In the present case the learned circuit judge finds that the
defendant "had no sufficient reason in law or fact to believe
that Kellogg, Sawyer & Co. were about to dispose of their
property with intent to defraud their creditors;" but, on the
contrary thereof, he found they "were about to make an
assignment of all their property in trust, for the benefit of
all their creditors alike, and of which said plaintiff had
notice," and that the levy of the attachment, the prosecution
of the suit, and the issuing of the execution and levy there-.
under, were without authority of law, and without the right
of the defendant so to do, and that the levy under both
writs was fraudulent against the rights of complainants, and
is a cloud upon the title to the property.   I think the circuit.
judge, as I have said before, is fully sustained by the record,
and he might with great propriety have added that the pro-.
curing of the writ of attachment, under the circumstances,
was a fraud upon the court.

We will now consider the first ground of objection stated.

by the learned counsel for the defendant, viz., that the court has no jurisdiction to relieve against the wrong complained of.

It was expressly decided by this Court in *Rowe v. Kellogg,* 54 Mich. 206, that complainants had no remedy at law, and were we now to accept the legal conclusion of the counsel for defendant there would be no remedy in equity. This would be to substantially admit that our system of jurisprudence, although it embraces the common-law and the entire field of English chancery jurisdiction, has in the end proved a failure. I am not yet prepared to acquiesce in a decision fraught with such consequences.

It is true, proceedings by attachment are statutory, and assignments for the benefit of creditors have been placed under the control of legislative provisions; but I have failed to find anything, in either of these statutes, depriving a court of equity of jurisdiction in cases of fraud committed upon the rights of either party, or upon the court, in taking proceedings under them. The rights of a person to his property, and to the proper remedy for its protection, are as old as the law itself.

They are secured in the organic law of our State, and I have yet seen no disposition in our legislation to depart from them, when its acts are properly construed.

In this case liens to the amount of the value of the property attached were obtained upon it through the fraud of the defendant. The property, from that day forward, except the use of it, was as completely under the control of the defendant as though she were the sole owner. The complainants could not sell it, nor obtain a loan upon it, nor rent it for a term of years, with any degree of safety. The lien was properly entered of record, and *prima facie,* after the judgment was obtained, was for that amount. True, the lien was void in fact, but it is *prima facie* a damaging

64 Mich.—34.

cloud upon the complainants' title until removed by the action of the court. Why should not equity take jurisdiction of the case, and declare the lien obtained upon the complainants' property void by reason of the fraud perpetrated in obtaining it, and remove the cloud from the title of complainants' property, which so seriously injures its sale?

Fraud is certainly one of the grounds of original equity jurisdiction, and it makes no difference whether it arises under statute or common law; and equity, when properly administered, never fails to relieve a person's land from unjust claims and clouds in disparagement of his title created through fraud. Nowhere in the attachment law, or under the legislation relating to assignments by insolvent debtors, or in any other statute, have I been able to find any provision depriving a court of chancery of its jurisdiction in cases like the present; and in no case where a remedy is of so long standing, and absolutely necessary to furnish the proper redress, will such a change be presumed.

It is claimed by the defendant that the bill is filed merely to obtain the dissolution of an attachment. I do not think this view takes in the proper scope of the bill; but if this were true, and the attachment levy was obtained by false affidavit, and fraud practiced upon the opposite parties and the court, can there be any doubt that the fraudulent and illegal proceeding would be a proper subject for the consideration of a court of equity, and fall within its jurisdiction? I think it clearly would, and that there is nothing contained in our statutes depriving it of jurisdiction in such a case. In this case, however, the dissolution of the attachment is only one of the consequences which necessarily follow the discovery of the fraud. It was not only the duty of the court in this case to dissolve the attachment on discovering the fraud and imposition practiced upon the parties and court, but also to remove from the records all evidence of any lien created thereby, and to restore to complainants all rights of which

they had been deprived by the illegal proceeding. The fraud practiced upon the complainants and their assignors required this; but a fraud upon the court has always been regarded as the most odious of all frauds under forms of law, and should always receive the just condemnation of all legal tribunals wherein it is attempted. *Galatian v. Erwin,* Hopk. Ch. 54; Mitf. Eq. Pl. 131; *Wright v. Hake,* 38 Mich. 525; *Adair v. Cummin,* 48 Id. 375; *Edson v. Cumings,* 52 Id. 52; 1 Story, Eq. Jur. § 438; *State v. Phœnix Bank,* 33 N. Y. 26; *Loyd v. Mansell,* 2 P. Wms. 74.

There is no proceeding in any court procured by fraud and imposition which, as between the parties, will not be set aside upon a sufficient disclosure of the fraud, if injury has been sustained by the party imposed upon thereby. 1 Story, Eq. Jur. §§ 189–190*a,* 439; Madd. Ch. Pr. 204; Will. Eq. Jur. 147; *Huguenin v. Baseley,* 14 Ves. 273; *Mortlock v. Buller,* 10 Id. 306; *Lawley v. Hooper,* 3 Atk. 279; *Belcher v. Belcher,* 10 Yerg. 121. See, also, *New York Exchange Co. v. De Wolf,* 31 N. Y. 273; *Kennedy v. Daly,* 1 Schoales & L. 355; *Dobson v. Pearce,* 12 N. Y. 156; *Davis v. Tileston,* 6 How. 114; *Fenemore v. U. S.,* 3 Dall. 357.

I have no doubt of the right of the complainants to the relief prayed, and, in my judgment, the decree rendered by the circuit judge should in all things be affirmed, with costs.

CHAMPLIN, J. I concur in the result reached by Mr. Justice SHERWOOD. I place my conclusion upon the complainants' case made by the bill. I do not decide that a defendant in an attachment suit may neglect to take the steps provided by statute to obtain a dissolution of the attachment, and afterwards file a bill to set aside the lien on the ground of fraud; nor do I think he may, after levy of the attachment, convey the property to a third person, so as to confer upon him an equitable right to contest the validity of the attachment lien.

In this case the complainants are trustees, and represent the interests of creditors. The estate is insolvent. They have no individual interests to subserve, and their assignors can receive no direct benefit from the suit. Of course, the more their creditors are paid the less they will be liable for after distribution, but the total of their liability will not be changed; for, if complainants succeed, they will owe Mrs. Rowe as much more as they will their other creditors less. It is the policy of the law in Michigan that all the creditors of an assigning debtor shall share equally, and without preference, in the assigned property. After the assignment was made, we held that the assignees could not employ the remedy provided by law to obtain a dissolution of an attachment wrongfully levied. If it be conceded that this attachment was levied without cause, the lien is unlawfully obtained, and the property should be distributed ratably among all the creditors. There is no other way in which the lien so obtained can be removed except through the interposition of a court of equity. To enforce the trust, and to prevent fraud, I think we may grant relief.

When the case was before us on the former occasion to review the order dissolving the attachment, no evidence was introduced to show that the plaintiff in that suit had any reason to believe that the defendants in that suit were about to dispose, or had disposed, of their property with intent to defraud their creditors. Mr. Rowe testified then that the affidavit for attachment was sworn to about noon, and the records were not examined, and he was not aware that the land where Mr. Kellogg's home was had been deeded to his wife until he discovered it upon the record that afternoon. This conveyance, therefore, could not have induced the belief claimed in the affidavit. He did not testify at that time to any conversation with Mr. Kellogg in which he stated that they were going to make an assignment, and that the business would continue right on as usual. He does testify to

such conversation in this case. The conversation, if it occurred, was material, and it is somewhat singular that it should have been overlooked. Upon the testimony, given as it was in open court, I do not feel like disturbing the conclusion reached by the circuit court.

CAMPBELL, C. J. When these complainants applied, under the statute, to set aside defendant's attachment, we held they had no such statutory right. *Rowe v. Kellogg*, 54 Mich. 206. We also intimated that, as the record there appeared, we thought the facts found by Judge Mills would have supported a dissolution, and that it might be that complainants had some other possible remedy, which, of course, could not then be decided.

They now have filed a bill in chancery to set aside this attachment, and the court below gave them relief. I do not think the decree can be sustained on any known principle of equity.

The statute which allows a motion for dissolution has been uniformly construed as authorizing it without reference to the good faith or well-founded belief of plaintiff in the grounds of suing out the writ. The issue on that motion is whether the fraud or other wrong actually existed, and not whether plaintiff had reason to believe its existence. If not so existing, no amount of good faith would save the writ. *Folsom v. Teichner*, 27 Mich. 107; *Blanchard v. Brown*, 42 Id. 46.

If the present equitable suit will lie, it can only be on some principle which would have justified it had no statutory remedy existed for dissolution; and it can only lie if it could have been brought when the jurisdiction of law and equity was in separate tribunals. A suit in equity to interfere with proceedings at law is a distinct proceeding, and hostile to the suit on the law side of the court. The cases in which equity can restrain legal proceedings are very few, and still

fewer where it can interfere with part of the proceedings resting on mesne process, without reaching the merits of the controversy.

The general rule, and so far as I know the universal rule, is that no court can interfere directly to set aside the service of mesne process in another court where it is on its face regular and sufficient. So far as such power is vested anywhere, it is the function of every court to rectify abuses of its own process. If it has no such power in a given case, then the power does not usually exist, if it exists at all. A court of equity has no right, on account of some imagined danger, to enlarge its recognized jurisdiction in any direction, still less by way of interference with other jurisdictions. The fact that the same judge acts in the matter can make no difference. A court of law cannot, by any construction, be put under new subjection to a court of equity until the Legislature so ordain.

But granting that there may be—although I think there are not—exceptions which will allow such interference, there is none that I am aware of which will allow a court of equity to extend a statutory jurisdiction to cases where the statute itself denies it.

The right to sue out an attachment is made by law to depend on the belief of the plaintiff in the truth of jurisdictional facts. The statutory remedy provides for considering the facts themselves. . But except by statute such inquiry cannot be made. Probable cause is not required to be shown by specific facts in the affidavit, but only by the plaintiff's assertion of belief founded on reasons not detailed. And it may exist where all parties are innocent in fact.

The only possible ground for equitable relief, if it exists at all, must be fraud. And this fraud can only exist in using the remedy without any honest belief in the facts sworn to. Such is the rule in regard to suits for malicious prosecution, which cannot be sustained without proof of both malice and

lack of probable cause. It would be remarkable if the property of a debtor should be held more sacred than his person.

This record does not, I think, show that the assignors who assigned to complainants had any conscious fraudulent purpose. But I think it appears very clearly that defendant had reason to believe they meant to do what they had no legal right to do. There was evidence, which I believe is true, that one of the Kelloggs gave Mr. Rowe to believe that the assignment would not be followed by an immediate winding up of the business. The case shows beyond contradiction that when the testimony was taken, long after the assignment, no steps had been taken to do so. In *Wilhelm v. Byles*, 60 Mich. 561, we recently held that the action of the assignees, however well intentioned, was a legal fraud against creditors, and that, if the assignors had made the assignment on any such conditions, it would have been a fraudulent assignment. I have no doubt from this record that this continuation of business was contemplated and intended, and that Mrs. Rowe had reason to believe it. Its actual effect was to hinder and delay creditors wrongfully, and thereby defraud them.

While I do not believe any of these parties were guilty of moral turpitude or had any dishonest or consciously illegal and wrong design, or thought any wrong was done, there can be no doubt of the legal fraud actually done under the assignment. I think the facts warranted Mrs. Rowe in her affidavit that she had reason to believe it was to be done, and that it was not wanton or malicious, or made with any unlawful purpose. I think the bill should be dismissed.

MORSE, J. I am not satisfied that the decree below is right upon the merits, and therefore shall reserve my opinion as to the jurisdiction of equity in this case.

The decree, as a basis for the relief granted complainants, finds that the defendant, Florence V. Rowe, had no sufficient

reason in fact or in law to believe that Kellogg, Sawyer &
Co., the defendants in the attachment suit, were about to
dispose of their property with intent to defraud their credit-
ors, as stated in her affidavit, and that in fact they were not
about to do so.  It further finds her levy of attachment and
execution upon the premises in controversy to be without
authority of law, and without right in said Florence V. Rowe
to proceed in such action, and the levy of said attachment
and execution fraudulent against the rights of the assignors,
and fraudulent as against the complainants as trustees of the
creditors they represent.

There is no law as yet in this State preventing one creditor
from obtaining a first lien upon the property of his debtor,
and thereby a preference over other creditors, if such lien is
obtained by due process of law and without fraud.

In this case there is no pretense but Florence V. Rowe had
a valid indebtedness against the firm of Kellogg, Sawyer &
Co.  On the first day of February, 1883, she loaned them,
through her husband, who acted as her agent, $1,700 in cash,
and received their note as security for the payment of the
same.  This note bore interest at 8 per cent. per annum, and
was due and payable 30 days from its date.  At the time of
the giving of this note, Joseph E. Kellogg, one of said firm,
was ostensibly the owner of a fine house and lots, his resi-
dence, in Kalamazoo, valued at from seven to ten thousand
dollars.  On the thirteenth of the same month and year he
quitclaimed this house and lots to his wife, the deed not be-
ing recorded until April 20, 1883.

Thaddeus H. Rowe, the husband of the defendant, testifies
that, before and after the making of said loan, said Kellogg
represented said residence to be his, and requested Rowe, who
was dealing in real estate, to sell it for him, setting his price
at $10,000.  In the summer and fall of 1883, Rowe, in be-
half of his wife, endeavored to obtain payment upon this
note.  On the sixth of November, 1883, he saw Frank I.

Kellogg, one of the firm, who said that the firm had suspended payment, and could do nothing towards paying the note. He stated, so Rowe swears, that they were going to make an assignment, and had picked out one man for assignee, the complainant Byles, but that the assignment would not stop their business; they were going right along with the business the same as before. After this talk, Rowe examined the record, and found this quitclaim deed from Joseph E. Kellogg to his wife. Rowe then went home and informed his wife, the defendant, of his conversation with Frank Kellogg, and the discovery of the record of this deed.

The defendant then made the affidavit, and sued out her writ of attachment.

If the testimony of Rowe is true, he had ample reason to believe that the assignment about to be made was to be a disposition of property in fraud of his wife and other creditors.

She corroborates her husband as to the information he swears he imparted to her; and, if her testimony is true, she was justified in making the affidavit she did. And I am inclined to believe the statements of the Rowes. Kellogg denies the truth of the testimony of Rowe that he told him they were going to run the business right along as usual, but the subsequent action of the firm of Kellogg, Sawyer & Co., and their assignees, tends strongly to substantiate the statement of Rowe.

In fact, as appears from the testimony of all the parties, the business was run after the assignment just the same as before, except that the assignors were paid good salaries by the assignees for performing precisely the same duties in which they were each respectively engaged before the assignment.

At the time the testimony was taken in this suit, the opinion of this Court in *Wilhelm v. Byles*, 60 Mich. 561, had not been filed.

The assignment was executed November 9, 1883. The

Kelloggs and Sawyer testified that after such assignment, and up to 1885, they had all been engaged in "aiding our assignees in *conducting our business.*" Mr. Sawyer was up in the woods, taking charge of the business at the mill, and doing the same kind of business he was before the assignment. Mr. Byles, one of the assignees, it is claimed, had a general oversight of the business. As Frank Kellogg testifies:

"He goes up to the mill once or twice a month, and he comes down here occasionally, and he looks the thing over, and gives general directions. We *try* to carry them out."

It is perfectly plain from the whole record that there was but little, if any, difference in the conducting of the business before and after assignment. And if the business had not been stopped by the decree of this Court, on the application of the creditors, whom the assignees claim to represent in this suit, there is good reason to believe it would have been running yet, without the payment of any dividends to the creditors.

Such being the action of the assignors, and the assignees of their own choosing, after assignment, in perfect accord with their expressed intention by Frank Kellogg to Rowe, as he claims, it strikes me as more than likely that Frank Kellogg stated to Rowe, in effect, that the proposed assignment would make no difference in their business, except as it operated as a forced (as far as the creditors were concerned) suspension of payment of their just debts. It appears that the assignment was used as a means of gaining time to carry on their business, and to stave off the creditors until such time as they were able to pay. And, such being the use the assignment was put to, the intention of such use, at the time of the assignment, may easily be inferred, if it is not, indeed, a logical conclusion.

In *Wilhelm v. Byles* the majority of this Court held that the arrangement shown in the present case, by which the

assignees carried on the business of Kellogg, Sawyer & Co. substantially as it was before the assignment, was fraudulent as to the creditors of said firm; that the assignees could not hinder and delay creditors while they carried on the business of the assignors, and speculated upon the chances of making or losing in the conduct of the business in which the assignors had failed.

Any transaction by a debtor in failing circumstances, by which he endeavors and intends to hinder and delay his creditors, is fraudulent, even if it be a general assignment purporting to be for the benefit of all his creditors. *Pierson v. Manning*, 2 Mich. 445; *Hollister v. Loud*, Id. 309; *Flanigan v. Lampman*, 12 Id. 58; *Angell v. Rosenbury*, Id. 241; *Allen v. Kinyon*, 41 Id. 281; *Buck v. Sherman*, 2 Doug. (Mich.) 176. And in a case like the one at bar, where the affidavit charges an intent to dispose of property in the future to defraud creditors, any action of the defendant, after the making of such affidavit, and before hearing upon proceedings taken to dissolve the attachment, so disposing of his property as to hinder and delay, and thus defraud, creditors, is admissible in evidence upon such hearing; and, if it be established that such action was taken with intent to hinder and delay creditors, the attachment will not be dissolved.

This, in my opinion, is the *status* of this case: Frank I. Kellogg, one of the firm, stated to Rowe, who communicated such statement to the defendant before the making of the affidavit for attachment, that the firm intended to make an assignment by which they would be enabled to carry on their business as before. Three days after such statement the assignment was made, and the business of Kellogg, Sawyer & Co. was conducted, after such assignment, substantially as before, from November 9, 1883, until the decree of this Court, April 15, 1886, put a stop to further proceeding in that direction. The creditors were delayed and hindered in the collection of their debts by this action for nearly three

years; and such creditors were compelled to appeal to this Court to get even a dividend out of the estate of the assignors.

What Mrs. Rowe feared would be done, what Kellogg threatened to do, was done; and we have once declared it a fraud upon the creditors. This being so, in my opinion, the decree of the court below is wrong, and ought to be reversed, and the bill of complaint in this cause dismissed.