## St. Paul's Episcopal Church et al. *vs.* William T. Fields, Executor, et als.

First Judicial District, Hartford, October Term, 1908.
Baldwin, C. J., Hall, Prentice, Thayer and Gager, Js.

*Mrs. B* signed and delivered to *F*, in escrow, a promissory note under seal for $20,000, payable to the order of *H* one year from its date, to be turned over by *F* to *H* for the purpose of building a church edifice in Willimantic, on condition that within the year the further sum of $10,000 was " raised" for the same purpose. Upon an appeal by the executors of *Mrs. B* from a judgment in favor of the plaintiffs, it was *held:*—

1. That if the $10,000 could be said to have been "raised" by obtaining good, substantial, bona fide "subscriptions" therefor—as the defendants virtually conceded by their request to charge—it certainly might be equally raised by securing legal and enforcible "obligations" for that sum, as stated by the trial court in its charge.

2. That the subscriptions and obligations which the jury were thus permitted to treat as equivalent to money raised, referred to those which were binding and enforcible at law, not to those which were merely moral or honorary.

3. That a promise by the standing committee of the diocese to appropriate so much of a legacy of $6,000, when that should thereafter become available, as might be necessary to complete the required $10,000, was not an absolute, enforcible obligation to pay money at any time, nor even a present appropriation of the legacy; and therefore the evidence failed to show a compliance with the requirement that the $10,000 should be raised within one year, and did not support the verdict.

4. That the correspondence between *F* and *H* after the death of *Mrs. B* was admissible in evidence to show that *H* was informed of the terms of the conditional gift, and as tending to support his claim that in reliance thereon he expended time and effort in raising the $10,000; also to show knowledge upon the part of the executors of *Mrs. B*, of whom *F* was one, of the plaintiffs' claim that her conditions had been fulfilled, as well as tending to prove the seasonable presentation of their claim for $20,000.

A promise to give money to a charitable or religious organization, like any other promise, is not enforcible unless based on some consideration.

Since the enactment of the Negotiable Instruments Act of 1897 (General

Statutes, §§ 4171, 4176, 4198), the addition of a seal to a negotiable note does not affect its negotiability nor preclude the defense of a want of consideration.

In this State a promissory note may be delivered to the payee in escrow, to become operative if certain conditions are fulfilled, otherwise to remain ineffective; and therefore there is no good reason why delivery in escrow to a third person, who happens to be the business agent and adviser of the maker, should be invalid, provided he receives and holds the note not as such agent but in his individual capacity as any stranger might.

In determining whether a verdict should have been set aside, the evidence must be viewed—as it was by the jury—in the light of the instructions given.

Argued October 6th, 1908—decided March 3d, 1909.

ACTION to recover the amount of a promissory note delivered in escrow, the terms and conditions of which were alleged to have been complied with, brought to the Superior Court in Windham County and tried to the jury before *Roraback, J.;* verdict and judgment for the plaintiffs, and appeal by the defendants. *Error and new trial ordered.*

One of the plaintiffs, St. Paul's Episcopal Church, is a voluntary association of communicants of the Protestant Episcopal Church of the United States, and a mission station of that church in Willimantic, and the other plaintiff, Richard D. Hatch, is the missionary in charge of that mission. The defendants are the executors of the will of Lucy H. Boardman, who died March 29th, 1906.

The first count of the complaint alleges that on March 27th, 1906, Mrs. Boardman executed under seal and delivered to the defendant William T. Fields, in escrow, a promissory note for $20,000, which reads as follows: "New Haven, Conn., March 27, 1906. One year after date I promise to pay to the order of R. D. Hatch, of Willimantic, Conn., twenty thousand dollars at The Nat. Tradesmen's Bank, New Haven, Conn. Value received. Lucy H. Boardman, [L. S.]"; that the terms of said delivery provided that Fields retain the note in his possession to be delivered to the plaintiff Hatch for the purpose of building

a Protestant Episcopal Church in the city of Willimantic, provided that within one year from the date of the note the further sum of $10,000 be raised for the same purpose. It further alleges that the terms and conditions of the delivery were by Fields communicated to Hatch; that the latter, within the year, raised the $10,000 in fulfillment of the condition; and that the claim for $20,000 was duly presented to the defendants as executors, and was disallowed.

The second count alleges that on March 26th, 1906, the plaintiff Hatch promised Mrs. Boardman that if she would give him $20,000 for the purpose of building such church, upon condition that $10,000 in addition be raised for the same purpose within one year, he would give $2,000 toward said $10,000 and would personally endeavor to secure the balance, and that on March 27th, 1906, Mrs. Boardman accepted said offer and in performance of said agreement delivered to Fields her note for $20,000, payable one year from date, to be held by him in escrow until the performance of the conditions of said agreement, and then to be delivered to Hatch. The other allegations are that Hatch performed all the conditions on his part to be performed, and, relying upon the agreement, by the expenditure of time and effort, within the year raised $10,000 for building the church, and notified Fields thereof, and that the claim was duly presented to the defendants as executors, and disallowed.

The answer, as to both counts, admits the execution of the note, denies that it was delivered to Fields in escrow, or that the $10,000 was raised within the year, or that the claim was presented to the executors, and alleges that there was no consideration for the note; and as to the second count, it also denies the alleged agreement.

The plaintiffs claimed to have proved that Hatch immediately began efforts to raise the $10,000, and set apart therefor securities of his own for more than $2,000, which he has held for this purpose ever since; that he also within

the year, raised the following sums in the following manner for the purpose of building the church: $1,689.16 in small subscriptions, of which $1,119.91 was paid in within the year; $1,000 by an appropriation of the Missionary Society of the Diocese of Connecticut, made upon the condition that the whole $10,000 was raised; and $6,000 by the appropriation, by the Bishop and Standing Committee of the diocese, of a legacy of that amount left to them to dispose of by the will of Lucretia Terry; and that the sums thus raised, including the $2,000 set aside by him, amount in all to $10,119.91. The plaintiffs also claimed that the evidence showed that Fields had notice that this sum had been raised, also that the claim now in suit was duly presented to the executors.

The defendants offered no evidence, but claimed that the evidence of the plaintiffs showed that Mrs. Boardman never saw Hatch and made no agreement with him; that there was no consideration for the note; that Fields was at the time of Mrs. Boardman's death, and for fifteen years prior thereto had been, her business agent in charge of most of her financial affairs, and received the note in this relation and not as depositary of it in escrow; that the plaintiffs had no knowledge of the existence of the note, and had not accepted the conditions imposed by Mrs. Boardman until after her death, and that only $1,119.91 of the necessary $10,000 had been raised.

The plaintiffs claimed that, the note being under seal and purporting to be given for value received, the consideration could not be questioned.

The court, upon the first count, instructed the jury, among other things, as follows: "Keeping in mind the instructions already given you, and the claims made, I say to you that if you find from the evidence that Mrs. Boardman delivered the note to Mr. Fields upon the terms and condition that he retain said note in his possession to be delivered to the plaintiff, Mr. Hatch, for the purpose of

building a Protestant Episcopal Church in Willimantic, provided and upon condition that within one year from March 27th, 1906, the further sum of $10,000 was raised; that the time of delivery of the note and conditions were communicated to Mr. Hatch; and that he fulfilled said conditions by raising said sum of $10,000 within one year from March 27th, 1906; and, further, that within the time limited he exhibited this claim to said executors, then, . . . under such circumstances, you should find for the plaintiffs upon the first count."

The court, upon the second count, instructed the jury that "a promise to donate money to a charitable or religious organization, either by a subscription or by giving a note, is a gratuitious promise, which cannot be enforced unless some consideration therefor exists "; and that "to constitute a sufficient consideration for this contract, you must find that either a benefit accrued to Mrs. Boardman by signing the note, or a loss, trouble or inconvenience accrued to or a charge of obligation rested upon, St. Paul's Church or the Rev. Mr. Hatch, as a result thereof."

The court also instructed the jury that "it is necessary to the validity of a conditional delivery, or a delivery in escrow of an instrument, that it be placed in the hands of a third party or stranger, who is called the depositary; but a stranger, as used in this sense, is any person not a party to the instrument or transaction, and the fact that the depositary has acted in other matters as an agent or attorney of the party making the delivery does not affect the validity, provided he received the instrument simply as a depositary for the purpose of making a delivery of it. If, therefore, you find that Mrs. Boardman placed the note in the possession of Fields, not as her agent, but solely for the purpose of delivering the note to Hatch upon the performance of the prescribed condition, then there was a good conditional delivery of the note."

St. Paul's Episcopal Church *v.* Fields.

The jury were also instructed that "the plaintiffs to recover must show by the evidence that the condition prescribed by Mrs. Boardman has been fulfilled, namely, that $10,000 was raised within a year from the delivery of the note to Mr. Fields. . . . The court cannot, as a matter of law, give you the details as to the manner in which this money was to be raised, which the parties have omitted, and which Mrs. Boardman omitted, but instructs you that the plaintiffs would, under the alleged provision, be bound to do all things that would be reasonably necessary and proper to raise the $10,000, taking into consideration in determining what should be done under all the surrounding circumstances, the relation of the parties to this subject, and the apparent purpose and intention of Mrs. Boardman in using this expresssion. In this connection, you should at least find that the sum of $10,000 has been paid to the Mission, or that good, substantial, bona fide subscriptions or obligations had been made to it for that sum for the new church building within the time limited."

The defendants assigned as reasons of appeal that the court erred, in charging as above, in refusing to charge certain requests of the defendants, in admitting certain evidence against the defendants' objection, and in denying the defendants' motion for a new trial upon the ground that the verdict was against the evidence.

*Burton Mansfield* and *James E. Wheeler*, for the appellants (defendants).

*Morris W. Seymour* and *David S. Day*, for the appellees (plaintiffs).

THAYER, J.    Upon the pleadings the plaintiffs were bound to prove that they raised $10,000 within a year from the date of the Boardman note, for the purpose of

building a church. They claimed that $6,000 of this sum was raised within the time, by the appropriation, by the Standing Committee of the Diocese of Connecticut, of a legacy from a Mrs. Terry. The entire evidence in the case is certified as a part of the record. From this it appears that Hatch learned that Mrs. Lucretia Terry had left a bequest of $6,000 to the Standing Committee, and he wrote to the bishop asking him to present the claims of St. Paul's Church, and to ask the committee to give that bequest toward making up the sum of $10,000. At a meeting of this committee held on February 18th, 1907, at which the bishop and all the members of the committee were present, "it was, among other things, unanimously agreed as follows: That when the legacy of Mrs. Lucretia Terry of $6,000 to the Bishop and Standing Committee shall become available, so much of the same as shall be necessary to secure the conditional gift of $20,000 from Mrs. Lucy H. Boardman shall be appropriated for the use of St. Paul's Church, Willimantic." The bishop notified Mr. Hatch of this action of the committee. No part of the $6,000 has ever been paid to the plaintiffs. This was the only evidence introduced upon the trial tending to support the plaintiffs' claim that they had raised $6,000 from the Standing Committee, except that there was proof that at some time—whether before or after March 27th, 1907, did not appear—$6,000 received from the Terry estate was on deposit in a Hartford bank subject to the order of the Bishop and the secretary of the Standing Committee. The jury were instructed that in order to find that the plaintiffs had raised the $10,000, they must at least find that the money had been paid to the mission, or that good, substantial, bona fide subscriptions or obligations had been made to it for that sum within the year.

The plaintiffs did not and cannot complain of these instructions. In determining whether the verdict should have been set aside, the evidence must be viewed, as the

jury must have viewed it, in the light of the instructions given. But, so viewed, it does not support the verdict.

The subscriptions and obligations which the jury were permitted to treat as equivalent to money raised, were subscriptions and obligations legally binding the obligors to pay and such as would be enforcible at law, not mere moral or honorary obligations. The action of the Standing Committee did not bind them to pay $6,000 absolutely at any time. It was not even a present appropriation of the particular fund to which it referred, the legacy; but merely an agreement that in the future, when it should become available, they would appropriate to the plaintiffs' use such part of it as should then be necessary to secure the Boardman gift. Thus it was not an absolute obligation to pay money, but, at most, a promise, if and when a certain fund should become available, to appropriate a part thereof to the use of the plaintiffs. The legacy might fail and never become available, in which case there would be no legal obligation resting upon the committee to pay anything. Such a conditional obligation did not fulfil Mrs. Boardman's requirement that the money should be raised within one year. *Bates College* v. *Bates*, 135 Mass. 487, 488; *New York Exchange Co.* v. *De Wolf*, 31 N. Y. 273, 279. It is unnecessary to consider the other grounds upon which it is claimed that the verdict was against the evidence. It was essential to a recovery upon either count, that the plaintiffs should prove that the sum of $10,000 had been raised. Having failed to establish this fact, the verdict should have been set aside.

The defendants claimed that the evidence showed that there was no consideration for the note. The court instructed the jury, as to the second count, that a promise to donate money to a charitable or religious organization, either by subscription or by giving a note, could not be enforced unless some consideration therefor existed, and that to support the contract of subscription claimed,

they must find either that a benefit accrued to Mrs. Board-
man by signing the note, or that a loss, trouble or incon-
venience accrued to the plaintiffs or one of them; but as to
the first count it charged, in substance, that there could
be a recovery regardless of the claim of want of consid-
eration. The defendants had requested a charge as to
both counts substantially like the charge given as to the
second count, and they complain of the court's refusal
to apply it to the first count, and of the charge as given as
to that count. It is urged in support of the charge, that
as the note is under seal the consideration cannot be
questioned. Formerly such an instrument as that de-
clared on in the first count was held to be a specialty and
not a note, and the consideration could not for that reason
be inquired into. *Kennedy* v. *Howell*, 20 Conn. 349, 352.
Such instruments were then not negotiable in this State,
although in some of the other States they were held to be
notes and negotiable as such. By the Negotiable In-
struments Act of 1897, General Statutes, chapter 234,
§§ 4171 and 4176, an instrument like that in question is a
negotiable promissory note, and by § 4198 is open to the de-
fense of want of consideration. The charge as given with
respect to the second count might, therefore, properly
have been given with respect to the first, in view of the
claims of the defendants.

The fact that Fields was the agent of Mrs. Boardman at
the time she delivered the note to him did not preclude his
being the depositary of it in escrow, provided he received it,
not in his capacity as agent, but in his individual capacity.
There was nothing in the fact of his agency that so identi-
fied him with the note that the law will refuse to treat
him as a stranger to it, and nothing to prevent his proper
discharge of the duties of a depositary of it. Anciently,
escrows were confined to writings under seal. The law re-
garded the delivery of such a writing to the party to whom
it was made as an absolute delivery, although it was in fact

to be effective only upon the performance of some condition. It was not permissible to prove the condition, the reason given being, that we are to look to what was done, not what was said—"*non quod dictum est, sed quod factum est inspicitur.*" 1 Coke on Littleton, [36 a.]. So a delivery in escrow to the agent of the grantee was a present delivery to the grantee, and such delivery to the agent of the grantor was no delivery. The delivery, therefore, had to be to a stranger or third party, and because the delivery to such a person would be of no effect without words explaining it, the conditions upon which it was delivered or deposited might be shown. In later times, instruments other than deeds have been delivered in escrow, and the law does not, at least as to these, hold to its ancient strictness as regards the delivery, although there is considerable conflict in the authorities. A promissory note may, in this State, be delivered to the payee in escrow, to become effective if certain conditions are fulfilled, otherwise to remain ineffective. *McFarland* v. *Sikes*, 54 Conn. 250, 251, 7 Atl. 408; *Trumbull* v. *O'Hara*, 71 Conn. 172, 177, 41 Atl. 546; *Burns & Smith Lumber Co.* v. *Doyle*, 71 Conn. 742, 745, 43 Atl. 483. Such delivery may of course be made to the payee's agent, and if so, why not to a person holding that relation to the maker of the instrument? No good reason is apparent. The charge took this ground, and was a clear and correct statement of the law relating to this question, properly applied to the facts of the case, and the jury, consistently therewith, must have found that Fields received the note not as Mrs. Boardman's agent, but solely for the purpose of delivering it to Hatch, if the condition should be fulfilled.

The defendants take exception to that part of the charge already referred to wherein the jury were, in effect, told that obtaining subscriptions and obligations for the $10,000 within the year would be equivalent to raising that sum within that time. The defendants had requested the

court to charge that "the term 'raise', as used in connection with the said sum of $10,000, means money actually paid to the mission and in its hands, or good, substantial, bona fide subscriptions made to it, or both, for the new church building." The charge was a compliance with this request, except that the words "or obligations" were added after the word "subscriptions." If obtaining subscriptions was a compliance with Mrs. Boardman's condition that the sum should be raised, obtaining legal and enforcible obligations for the whole or any part of it would be equally so. A note or bond would certainly be as strictly money raised as would a subscription. In view of the request, the defendants cannot fairly complain of this part of the charge.

There are numerous assignments of error based upon the court's refusal to charge as requested by the defendants, and in restricting its charge in response to such requests to the second count only. As the questions raised are not likely to become of importance upon a retrial of the case, they need not be further considered here.

The plaintiffs were permitted, against the defendants' objection, to introduce in evidence a letter from Fields to Hatch, written two weeks after the death of Mrs. Boardman, informing him that Mrs. Boardman had arranged to contribute $20,000 toward the building of the church, provided the parish, within one year, contributed $10,000, and in connection therewith Fields was allowed to testify that he gave Hatch the notice because he felt it his duty to do so. The sole ground of the defendants' objection was that Mrs. Boardman being dead, Fields was not her agent in giving the notice. But he was at the time the depositary of the note and one of the executors of her will. The evidence was properly admitted to support the plaintiffs' allegation that Hatch was notified of the terms of the delivery of the note, and of the conditions, and of their claim that, relying thereon, he expended time and effort in raising the $10,000; also to show knowledge on the part of the

executors of the existence, nature and amount of the plaintiffs' claim.

Having introduced a letter from Hatch to Fields, written April 11th, 1907, informing him that the $10,000 had been raised, the plaintiffs offered a letter from Fields, acknowledging the receipt of Hatch's letter, and stating that the executors would consult with some of the legatees, and that he trusted that no opposition to the carrying out of Mrs. Boardman's wishes would be encountered. The defendants objected to the introduction of the last part of the letter, as immaterial to the issues and harmful to them. The letter as a whole was admissible as tending to show knowledge, on the part of the executors, of the plaintiffs' claim that the conditions of the subscription had been fulfilled, and that the plaintiffs, within four months thereafter, claimed payment of the $20,000. Whether the claim had been presented was one of the facts in issue upon the pleadings. The fact that the legatees were to be consulted by him regarding the payment of the claim tended to prove that at that time it had been presented. The evidence was therefore properly admitted.

There is error and a new trial is ordered.

In this opinion the other judges concurred.