THE FARMERS' COLLEGE v. Executors, etc., of CHARLES MC-MICKEN, Deceased.

(No. 10,219.)

1. A gratuitous subscription to pay certain moneys toward a particular stated fund, to be raised for the endowment of certain new professorships in a college, becomes a fixed legal obligation as soon as the college has performed its undertaking and raised the required amount of reliable subscriptions.
2. Such subscription is a proposition to the college to do an act if the college will perform a prescribed duty on its part, and if accepted, the contract is complete.

SPECIAL TERM.—The plaintiff, an incorporated institution, by a law of Ohio, seeks to recover the amount subscribed by the defendants' testator, to endow certain professorships, and extend successfully the knowledge of agriculture, both scientific and practical.

The agreement declared on, is as follows:

FARMERS' COLLEGE—ENDOWMENT OF PROFESSORSHIPS.

" We, the undersigned, in view of the praiseworthy efforts of the board of directors of Farmers' college to connect, with said institution, an experimental farm, agree to pay to said board or their authorized agent, the several sums by us respectively subscribed, for the purpose of purchasing a farm, and permanently endowing professorships in said institution, payable in two equal semi-annual payments, to-wit: on the 1st of April, 1854, and on the 1st of September, 1854, the whole to draw interest from the 1st day of April, 1854, until

paid." After several subscriptions had been made by a number of individuals, the aggregate sum thereby agreed to be paid, being $11,650, the testator, it is alleged, upon the same paper, subscribed his name, with the following memorandum:

"CINCINNATI, April 19, 1854.

"Charles McMicken—*ten thousand dollars,* or the annual interest thereof, for the purpose of endowing a professorship of agricultural chemistry, payable when ninety thousand dollars shall be raised for the purpose of establishing an agricultural and horticultural department *to* farmers, and if the aforesaid sum of $90,000 be not raised, and the department aforesaid, in successful operation, before three years from this date, then the subscription to be null and void."

On March 30, A. D., 1858, the testator died, without having paid any portion of the sum he had subscribed. Since his decease, this action is brought, and the defendants, the executors, etc., of McMicken, for the purpose of obtaining a judicial determination of all the questions involved, have filed their answer.

They admit that the subscription was made, but deny first, that any demand was made during the testator's life, of the sum claimed to be due; allege that no mention is made of the subscription in his will, though upon the general subject of his property, and its disposition, its details are very minute; that the paper, therefore, set up by the plaintiff as the foundation of this suit, did not create a legal obligation on the part of the testator to pay the sum now demanded. It is further alleged, that if a legal contract did exist, it imposed terms upon the plaintiff, which have not been fulfilled on its part, and until such performance there can be no recovery.

*John W. Caldwell & William B. Caldwell,* for plaintiff.

*Thomas M. Key and Taft & Perry,* for defendants.

STORER, J. All the questions involved in the case are submitted to the court, both of fact and law.

It is in proof that more than $90,000 were subscribed before the expiration of the three years, required by the subscription papers; that the subscribers were of sufficient ability, and the agreement was made in undoubted good faith. Indeed, $60,000 of the sum subscribed has already been collected in money, and the residue, of the amount pledged, invested securely bearing interest.

We are satisfied the terms of the subscription did not require the amount subscribed to be actually paid in cash before the defendants' liability to the plaintiffs accrued; an agreement to become responsible for the sum specified, made in good faith by solvent parties, would meet the terms prescribed by the testator. This we believe to have been the intention of the parties, and is the legal effect of the contract to which McMicken gave his assent. Moreover, all the subscriptions were made to obtain an end, which could not have been accomplished, unless a very large amount had been first subscribed, and the payment of the sums severally pledged would not have been required, until enough had been raised to realize the object all parties had contemplated. If, when McMicken's subscription was demanded, $90,000 had already been subscribed in the manner we have indicated, by persons able to pay, we hold the amount was, as is required by the subscription of McMicken, "actually raised," and the obligation on his part to pay in the mode provided, and his contract became perfect.

It is also proved the professorship was filled, instruction afforded to pupils, and the agricultural and horticultural department in the Farmer's college, were in successful operation before the time limited by McMicken had expired; of course, the objection urged that this part of the agreement was not performed, is not sustained by the facts.

But it is said no demand was made of the testator while alive, and we, therefore, are to infer it was not the intention of the plaintiffs to insist upon the subscription.

32

The testimony, however, on the point is decisive. Not only is a demand proved, orally, as well as by letter, but an arrangement, it seems, was spoken of by the testator, by which real estate, yielding a permanent ground rent, might be received in lieu of moneyed payments; the option having been retained in his subscription, to liquidate the principal at once in cash, or retain it, paying the annual interest. Beside this, the testator was present when the building was dedicated, and was personally aware of the organization of the department he was so anxious to aid in founding. Nor have we any doubt of the sufficiency of the consideration to sustain the testator's liability.

At a former period in our judicial history, there might be some doubt whether a subscription like this would have been enforced, as the act was merely gratuitous, and there are many early cases decided upon extremely technical grounds, which have been very properly overruled, or suffered to pass into oblivion.

In the case of *Williams College* v. *Danforth*, 12 Pick. 544, Chief Justice Shaw, in a very few words, decides the principles, divesting it of all difficulty, while he yields no doctrine of the law that is involved in the consideration of the subject. He holds the subscriber liable to pay, regarding his subscription as a proposition to the college to do an act on his part, if the corporation will perform a prescribed duty on theirs. If it is accepted the contract is complete. So here the testator proposed to the Farmer's college, if its trustees would raise $90,000, he would give the additional $10,000 to make up the gross amount, $100,000. They have complied with this agreement, and it only remains for the defendants to fulfill the obligation that rests upon them, as the representatives of the testator.

It has appeared in testimony, that the Farmer's college, an institute, originally founded by the liberality of a few energetic individuals, has already been advanced by the people of this vicinity, by the subscription of more than two hundred thousand dollars, all of which has been paid,

or secured to be paid. A portion of these amounts is represented by scholarships, another portion has been devoted directly to the enlargement of the college, to its appointees, and its corps of teachers.

These advancements have been obtained mainly by the persevering labor of those who have been its benefactors, as well as its professors, and are an earnest of what may be expected for its future usefulness. We refer to this matter merely to disabuse the case from any apprehension that the intended liberality of the testator will be disappointed, or the purposes for which he made the subscription, will not be fulfilled.

Judgment is given for the amount of the subscription, with interest, till the date of the demand.

Judgment for plaintiff.