UNIVERSITY OF VERMONT *v*. JAMES B. WILBUR'S ESTATE.

May Term, 1932.

Present: SLACK, MOULTON, THOMPSON, and GRAHAM, JJ., and SHERBURNE, Supr. J.

Opinion filed January 4, 1933.

148

*Stickney, Sargent & Chase* (*Davis, Polk, Wardwell, Gardiner & Reed,* of New York City, of counsel), for the defendant.

*Warren R. Austin,* of Burlington, for the plaintiff.

THOMPSON, J. This is an appeal by the University of Vermont, hereafter called the University, from the disallowance of its claim against the estate of James B. Wilbur. There was a trial by court, a finding of facts was filed, and a judgment was entered for the plaintiff. The defendant excepted.

The plaintiff seeks to recover upon the following promissory note delivered to it by Mr. Wilbur on November 13, 1928:

> "$100,000.00.
>
> Burlington, Vt., Oct. 20, 1928.
> For value received I promise to pay to the order of the University of Vermont, Burlington, Vt., the sum of one hundred thousand dollars.
>
> This note is given under the terms of the letter of President Guy W. Bailey to me, dated Oct. 10th, 1928, regarding a conditional gift of one hundred thousand dollars to the University of Vermont for a museum.
>
> (Signed) James B. Wilbur."

Mr. Wilbur, a resident and citizen of Manchester, died, testate, April 28, 1929. His will was duly admitted to probate, and executors were appointed and qualified.

Mr. Wilbur was a trustee of the University of Vermont and State Agricultural College from December 2, 1925, to the time of his death, and a member of its finance committee from June 18, 1927, to the time of his death.

He was a benefactor of the University. He was a collector of Vermontiana and owned a valuable collection of books, manuscripts, broadsides, and pictures which he intended to, and did, bequeath to the University in his will, dated November 18, 1927, on certain conditions which are not material in our disposal of the case.

From June 28, 1928, to August 10, 1928, Mr. Wilbur and Mr. Guy W. Bailey, president of the University, considered building a separate building to take care of the University's museum exhibits and also provide an adequate room therein in which to house and display Mr. Wilbur's collection, the building to cost not less than $300,000. This was a substitute for the original plan of Mr. Wilbur to have an addition built to Billings Library to house his collection. Mr. Wilbur approved of such a building and he proposed to give $100,000 to the University for the same on condition that the University raise $200,000 additional for that purpose.

Mr. Wilbur prepared a memorandum (Plaintiff's Exhibit 14) in which he stated: ''I give you the following stocks to apply on my conditional gift to the U. of Vt. for a museum,'' and also stated the conditions of the gift. He also prepared a typewritten draft of a letter (Plaintiff's Exhibit 15) to be written by Mr. Bailey to Bankers Trust Company directing it to sell all of the securities given, for him ''as President of the University of Vermont,'' except 100 shares of Atlantic Refining Company common stock, at certain named prices, ''and place the proceeds to the credit of James B. Wilbur. Please hold the remaining 100 shares of Atlantic Refining Common Stock subject to my further orders.'' Attached to this exhibit is a memorandum in Mr. Wilbur's handwriting, which reads: ''When stocks are sold will give my note for amount and buy 100 Atlantic Ref. for difference between amount and $100,000.''

Mr. Bailey visited Mr. Wilbur at Manchester on October 9, 1928, and the conditions of Mr. Wilbur's gift were agreed to by

them. The precise conditions of the gift, as agreed to, are set forth in a letter written by Mr. Bailey to Mr. Wilbur, dated October 10, 1928, and they are substantially the same as those mentioned in Exhibits 14 and 15. This letter is Plaintiff's Exhibit 35, and is hereafter referred to as such. Although it is dated October 10, 1928, it was actually written on a later day at Mr. Wilbur's request. It is the letter that is referred to in the note in suit. It is as follows:

"October 10, 1928.

"Hon. James B. Wilbur,
 Manchester, Vt.

"Dear Mr. Wilbur:

"On behalf of the University of Vermont, I acknowledge your gift to the University of Vermont for a museum, of the following stocks delivered to Bankers Trust Company, 16 Wall Street, New York City, namely:

(The several stocks mentioned in this letter are set forth in finding No. 7, hereafter quoted, and reference is made to that finding for the same.)

"This gift is upon the conditions following:

"1. The sum of money intended to be given by you is $100,000, and the above described shares of stock may be sold by me, under circumstances considered most favorable for producing said sum of money. The whole number of shares, or any number less than the whole, may be sold by me at any time and from time to time, according to the circumstances. I shall first afford you the opportunity of buying said stock at the market price on the 10th day of October, 1928, or at the market price on the day of my offering said stock for sale, according to your option, whenever I elect to sell any of said stock.

"2. This gift is also upon condition that I shall raise $200,000 on or before Oct. 10, 1929, to be added to this sum of $100,000, for the purpose of building a museum on the grounds of the University of Vermont, at Burlington, Vermont, to cost not less than $300,000. If I should not raise the

additional $200,000 on or before Oct. 10, 1929, the above described stocks, or the avails of them realized from a sale, or any note given by you to to me, in consideration of a loan of said stocks, or the avails thereof, shall be returned by me to you, or your legal representatives, on the 11th day of October, 1929.

·''3. Pending the raising of said additional $200,000 by me, all the income or interest on said stocks, or the avails thereof, if invested by me, shall be paid unto you. You shall not be bound to pay any interest to the University until your money is needed and called for as the final or last installment of $100,000 required for constructing said museum. It is understood that the additional $200,000 to be raised by me shall be first expended before your gift is expended.

Respectfully yours,

(Signed) Guy W. Bailey.

''The foregoing letter correctly states this conditional gift by me, to the University of Vermont, of $100,000 for a museum.

(Signed) James B. Wilbur.''

On November 13, 1928, Mr. Wilbur delivered the note in suit and this letter, with the postscript signed by him, to Mr. Bailey for the University of Vermont.

The court made certain findings as to the transactions about the securities mentioned in Plaintiff's Exhibit 35, and the execution and delivery of the note in question, which are as follows:

''6. On October 9, 1928, plaintiff's exhibits 14 and 15, drafts of the agreement, were delivered to President Bailey by Mr. Wilbur, and on October 10, 1928, certain monied securities were given to the University of Vermont by Mr. Wilbur, aggregating in value at least One Hundred Thousand Dollars. This gift was perfected by delivery to the Bankers Trust Company for the University.''

''7. On Oct. 11, A. D. 1928, the University of Vermont, by the Executive Committee of the

Board of Trustees of the University of Vermont and State Agricultural College, accepted said gift by the following vote, plaintiff's exhibit 19:

" 'It was voted that the President, Guy W. Bailey, be empowered to sign all documents and to do all things necessary, including sale, endorsement and transfer of the following stocks delivered the Bankers Trust Company, 16 Wall Street, New York City, by Hon. James B. Wilbur for the University of Vermont, namely:

$25,000 New York City 4½s of 1926
100 shares Bethlehem Steel Corporation Pfd.
 40 shares Jones & Laughlin Steel Co. Pfd.
 60 shares Jones & Laughlin Steel Co. Pfd.
 4 shares American Steel Foundries Co. Pfd.
 60 shares American Steel Foundries Co. Pfd.
 10 shares American Steel Foundries Co. Pfd.
 50 shares Atlantic Refining Co. Common
200 shares Atlantic Refining Co. Common

and to carry out on the part of the University of Vermont the proposal made by Mr. Wilbur to give his note in lieu thereof for $100,000 as an incident of an arrangement for a gift of $100,000 to the University of Vermont upon condition that a sum of $200,000.00 additional be secured by the University on or before October 10, 1929, making a total of $300,000 to be used in the erection of a Museum at the University of Vermont, which arrangement is hereby accepted by the University of Vermont.' "

"8. If nothing further had occurred after this vote was taken the title to said securities would have remained in the University of Vermont, unless it failed to raise $200,000.00 additional on or before Oct. 10, 1929, for the purpose of building a museum on the grounds of the University of Vermont, to cost not less than $300,000.00."

"9. If the additional $200,000.00 had not been raised on or before October 10, 1929, said securities would have become the property of Mr. Wilbur, or

his legal representatives, on the 11th day of October, 1929, according to the terms specified by Mr. Wilbur and the conditions under which he turned said securities over to said University.''

"10. With the assent of Mr. Wilbur, who waived the opportunity of buying said stock himself, provided for in the draft of agreement, plaintiff's exhibit 14, the University of Vermont sold all of said securities, excepting 100 shares of Atlantic Refining Co., common, to others than Mr. Wilbur, for $86,218.29, and the University sold Mr. Wilbur said 100 shares of Atlantic Refining Co., for $13,781.71, making the total avails $100,000.00. Thereupon the University loaned Mr. Wilbur $100,000.00 and took the above note for it.''

(This finding then sets forth the correspondence which shows the details of transactions relating to the sale of the securities by the University. Reference will be made to the material parts of this correspondence when we consider defendant's exceptions to these findings.)

"11. This note mentioned in number 10 of these findings was expressly made subject to the same conditions attached to the securities, and if the University had failed to raise the additional $200,000.00 on or before October 10, 1929, the legal representatives of Mr. Wilbur's estate would have been entitled to a return of the note on the 11th day of October, 1929.''

The defendant excepted to the findings Nos. 6 to 11, inclusive. The substance of the grounds of all the exceptions is the same, namely, that there was no perfected gift of the securities made or attempted to be made to the University by Mr. Wilbur; that "the evidence is that all the securities, though nominally transferred to Mr. Bailey, were at all times the property of Mr. Wilbur, and all the sales were made for Mr. Wilbur's account by his directions, when and as he directed, and all the proceeds were credited to Mr. Wilbur's account at the Bankers Trust Company, and the 100 shares of Atlantic Refining Com-

pany stock were returned by his nominee, Mr. Bailey, to him and he executed and delivered the note in suit, and Plaintiff's Exhibit 35, all as parts of and constituting one transaction, which was simply and only a proposal to give One Hundred Thousand Dollars on compliance with the conditions specified in Exhibit 35.''

The real question raised by these exceptions is whether Mr. Wilbur intended to transfer a present interest to the University in the securities or their proceeds, if sold, when he delivered them to Bankers Trust Company for the University.

The defendant concedes that the evidence is that the securities were ''nominally'' transferred to Mr. Bailey, but it argues that there was no intention by Mr. Wilbur to make a present gift of them, and that it is clear that, in selling the securities, Mr. Bailey and the University were acting only as agents for Mr. Wilbur in respect of what both parties considered was still the property of Mr. Wilbur; that the whole transaction was only a proposal by him to make a gift to the University upon the fulfilling of a certain condition by the latter; that the note constituted a revocable offer which was revoked by and upon the death of Mr. Wilbur.

■■ The law is well settled that to constitute a valid gift *inter vivos* there must be an intention on the part of the donor to transfer the title to the property to the donee immediately and irrevocably, accompanied by such delivery as will place the donee in complete possession and control of the same. *Rice et al. Exrs.* v. *Bennington County Savings Bank,* 93 Vt. 493, 498, 108 Atl. 708. But such a gift, absolute in form, may be made subject to be defeated upon the happening of a subsequent event. *Blanchard* v. *Sheldon,* 43 Vt. 512; *Hackett* v. *Moxley,* 65 Vt. 71, 25 Atl. 898; *Bedford's Exr.* v. *Chandler,* 81 Vt. 270, 69 Atl. 874, 17 L. R. A. (N. S..) 1239, 130 A. S. R. 1057; *Goodrich's Exr.* v. *Bank,* 81 Vt. 147, 69 Atl. 651, 17 L. R. A. (N. S.) 181. The plaintiff claims that Mr. Wilbur made such a gift to it.

■ The evidence bearing on the transfer of the securities to Mr. Bailey for the University, and the intent of Mr. Wilbur in making such transfer, is found mostly in the exhibits and correspondence which were received in evidence. And the findings must stand if there is evidence which, in any rational view, supports them. *Labor* v. *Carpenter,* 102 Vt. 418, 148 Atl. 867.

The primary meaning of the word "give" is to transfer ownership or possession without compensation. *Spencer* v. *Potter's Estate,* 85 Vt. 1, 12, 80 Atl. 821.

Mr. Wilbur said in his drafts of the agreement, Plaintiff's Exhibits 14 and 15: "I give you the following stocks to apply on my conditional gift to the U. of Vt. for a museum"; and "When stocks are sold will give you my note for amount and buy 100 Atlantic Ref. for difference between amount and $100,000."

In Plaintiff's Exhibit 35, which Mr. Wilbur said correctly stated his conditional gift of $100,000 for a museum, Mr. Bailey wrote: "On behalf of the University of Vermont, I acknowledge your gift to the University of Vermont for a museum, of the following stocks delivered to Bankers Trust Company."

In the first condition stated in this exhibit, Mr. Bailey is given the absolute control of, and power to sell, the securities delivered to Bankers Trust Company by Mr. Wilbur, subject only to the condition that when he elected to sell any of them, he should first afford Mr. Wilbur the opportunity of buying such securities at certain market prices.

In the second condition it is provided that if Mr. Bailey did not raise the additional $200,000 on or before October 10, 1929, he should return the securities, or the avails of them realized from a sale, or any note given by Mr. Wilbur in consideration of a loan of such securities or the avails thereof, to Mr. Wilbur or his legal representatives.

In the third condition it is provided that pending the raising of the additional $200,000, all the income or interest on the securities or the avails thereof, if invested by Mr. Bailey, should be paid to Mr. Wilbur.

Mr. Bailey wrote to Bankers Trust Company on October 10, as follows:

> "Please sell for me as President of the University of Vermont the following stocks now held by you and place the proceeds to the credit of James B. Wilbur.
>
> (Then follows a list of all the securities except 100 shares of Atlantic Refining Co., common stock.)

"Please hold the remaining 100 shares of At-
lantic Refining Common Stock subject to my fur-
ther orders."

Mr. Bailey wrote the following letter to Mr. Wilbur on the
same day:

"In compliance with my promise I am today
writing to the Bankers Trust Company and enclose
a copy of my letter to them. I have not referred
in any way to any resolution respecting the sale of
the stock in question. As I thought the matter over
on the train I remembered that a year or two ago
I issued orders to them to sell certain stock and
they never questioned my authority in that respect.
As a matter of fact, I hope to have an Executive
Committee meeting either tomorrow or next day
and at that time I will see to it that formal action
is taken."

The meeting of the Executive Committee was held on Octo-
ber 11, 1928. Its action accepting Mr. Wilbur's gift is set forth
in finding No. 7, hereinbefore quoted.

On October 11, 1928, Bankers Trust Company wrote to Mr.
Bailey as follows:

"We have your instructions of October 10th
for the sale of certain securities which Mr. Wilbur
has directed us to hold subject to your instructions.
Upon completion of these transactions I shall re-
port to you further."

On October 13, Bankers Trust Company wrote to Mr. Bailey
reporting the sale of all the securities he had ordered to be sold,
and the prices at which they were sold, that the proceeds of the
sales would be placed to Mr. Wilbur's credit, and that they
were holding 100 shares of Atlantic Refining Co. stock subject
to his, Bailey's, further instructions.

Mr. Bailey kept Mr. Wilbur informed about the sale of the
securities and the amount realized. On October 26, Mr. Wilbur
wrote a letter to Mr. Bailey, the material part of which is as
follows:

"I made a bad break in selling my Atlantic Refining, have lost some seven thousand dollars and it is still going up. The total received for the stock sold was $86,218.29 the difference between this and $100,000 is $13,781.71 which is the price I pay you for the 100 shares Atlantic Refining remaining. Please write the Bankers Trust Company to turn the 100 shares Atlantic Ref. Common Stock over to me and hold same subject to my order. Please do this on receipt of this letter as I want to put it with other stocks in Trust account. Please write me a letter *dating* it the day you were *here* along the line of the memo. I gave you, stating that you received stock, money or my note only on condition of &c., &c. Then I will make out my note for $100,000, subject to condition mentioned by me and everything will be in order."

On October 27, Mr. Bailey wrote the following letter to Bankers Trust Company:

"Will you kindly transfer to Honorable James B. Wilbur of Manchester, Vermont, the 100 shares of Atlantic Refining Common stock that you are holding in my name as President and thereby hold the same subject to his order and oblige. Will you kindly acknowledge receipt of this order to me and also verify the transaction to Mr. Wilbur."

On October 29, Bankers Trust Company replied to this letter as follows:

"We have your letter of October 27th instructing us to transfer to James B. Wilbur 100 shares Atlantic Refining Common stock, which we have been holding subject to your order. We have told Mr. Wilbur that we are proceeding accordingly, and will report to both of you upon completion of the transaction."

On October 31, Mr. Bailey wrote to Mr. Wilbur as follows:

"I enclose copy of letter sent to the Bankers Trust Company. This morning I received a letter from them stating that they had made the transfer as you requested."

■ The defendant refers to certain expressions used in the correspondence and exhibits, which, standing alone, might be construed to support its contention that there was no present gift of the securities or their proceeds, but only a proposal by Mr. Wilbur to give $100,000 on condition that the University raise an additional $200,000. But in aid of the judgment, we must read the evidence so as to support the findings, if it can reasonably be done, and the evidence is not to be considered piecemeal, but is to be considered as a whole, together with reasonable inferences drawn therefrom. *Peoples National Bank* v. *Brunelle,* 101 Vt. 42, 46, 140 Atl. 160; *Nichols Electric Co.* v. *Fienberg,* 101 Vt. 99, 104, 141 Atl. 679.

■ The defendant, in its argument, ignores the first statement of Mr. Wilbur in his draft of agreement: "I give you the following stocks to apply on my conditional gift to the U. of Vt. for a museum." This statement shows a present intention on the part of Mr. Wilbur to transfer the title to the securities to the University, and when it was followed by the delivery of the securities to Bankers Trust Company for the University, the title to the securities passed to the University and it was placed in complete possession and control of the same, subject only to be defeated by the failure of the University to raise $200,000 additional within the stipulated time.

■ The only reasonable inferences to be drawn from the evidence are that the University accepted the gift; that thereafter Mr. Wilbur and the University considered and treated the securities and the proceeds thereof as the property of the University; that whatever President Bailey did about the same was done as agent of the University and not of Mr. Wilbur; that the proceeds realized from the sale of the securities were the property of the University; that they were loaned to Mr. Wilbur by it; and they were a legal consideration for the note in suit. It is inconceivable that the whole transaction was a mere sham. The exceptions to the findings in question are not sustained.

For the reasons above stated, the exceptions of the defendant to the refusal of the court to find in compliance with its requests Nos. IV and V, which relate to the same general subject, are not sustained.

Since the note in suit was given for a valuable consideration, it was not revocable during the lifetime of Mr. Wilbur, and is enforceable against his estate unless the University failed to comply with the condition of his gift.

The court found in finding No. 27 that "The condition that the plaintiff should raise $200,000 on or before October 10, 1929, to be added to the sum of $100,000 given by Mr. Wilbur for the purpose aforesaid, was fully performed by the plaintiff."

There are other findings relating to the subject-matter of this finding which will be referred to as the occasion may require. They and finding No. 27 were excepted to by the defendant on the ground, except as otherwise noted, that they are not warranted by the evidence.

The evidence on which these findings are based is not in dispute. The question is as to the correct conclusions to be drawn from the same and the legal principles to be applied.

The defendant, except in certain instances, has not briefed the specific exceptions to the several findings of which it complains, but has briefed the general proposition that it appears from the evidence that the conditions of Mr. Wilbur's gift were not complied with; and the disposal of the exceptions is controlled by the outcome of its position on this question.

The question is raised at the outset of the meaning of the word "raise" as used in the condition stated in Exhibit 35 that the University "shall raise $200,000" to be added to Mr. Wilbur's gift of $100,000 for the purpose of building a museum. The word "raise" has many meanings, but when applied to "raising" money for purposes similar to the one in question, it means not only money paid, but also subscriptions and obligations by responsible, solvent persons which legally bind the obligors to pay, and which are enforceable at law: "*bona fide* obligations, not mere moral or honorary obligations." *St. Paul's Episcopal Church* v. *Fields*, 81 Conn. 670, 72 Atl. 145, 148; *Livingston* v. *Lenox College*, 192 Iowa, 579, 185 N. W. 122; *Farmers College* v. *McMicken*, 2 Disney (Ohio) 495; *Westminster College* v. *Estate of Gamble*, 42 Mo. 411; *New London Literary & Scientific Inst.* v. *Prescott*, 40 N. H. 330, 333.

Two hundred and five thousand dollars was pledged before October 10, 1929, on the $200,000 to be raised by the University for building a museum. One hundred and ninety-six thousand dollars of the amount pledged was paid to the University by December 13, 1930; and it is conceded by the defendant that the remaining $9,000 is collectible.

The defendant claims that two subscriptions, one by Mason S. Stone for $15,000, and one by Miss Katherine Wolcott for $150,000, do not comply with the condition of Mr. Wilbur's gift because each was made on consideration of the promise of the University to pay to the donor, during his or her lifetime, an annual income, payable monthly, equivalent to five per cent. per annum on the principal sum given and paid in to the University. Mr. Stone's subscription was made September 23, 1929, and it was paid December 13, 1930, Miss Wolcott's subscription was made October 1, 1929, and it was fully paid by January 2, 1930.

Since the annuity phase of these two gifts is governed by the same principles of law, the defendant has confined its brief to a discussion of the gift by Miss Wolcott.

It appears from the findings that in the summer of 1929 Miss Wolcott went to Burlington with the intention of establishing some sort of a memorial to her uncle, Robert Hull Fleming, who graduated from the University in 1862. She was told of Mr. Wilbur's gift toward a museum on condition that $200,000 additional be raised, that about $50,000 had been raised, and whoever gave the remainder should have the privilege of naming the building. It seemed the opportunity she was looking for and she became greatly interested, but she felt that she could not afford to lose the income on so large a sum. She had negotiations with President Bailey about this gift which resulted in her proposing to give $150,000 toward building the museum if it were named for her uncle and if the University would execute to her its annuity bond securing to her the payment by the University of an annual income equivalent to five per cent. on the principal of her gift, the same to be payable monthly, and to be secured by a lien on the net tuition receipts of the University. There were other conditions attached to her proposed gift, the nature of which will appear later.

At a special meeting of the executive committee of the University of Vermont and State Agricultural College held on

September 13, 1929, Miss Wolcott's proposed gift and the conditions attached to it, and other gifts to the University, were considered, and it was unanimously voted:

> "That all of the foregoing gifts are hereby accepted clogged with the conditions upon which they were made, and that the University of Vermont and State Agricultural College and the University of Vermont will carry out and perform all of said conditions. * * *
>
> "That the principal sum of One Hundred Fifty Thousand Dollars given absolutely by said Miss Katherine Wolcott, shall be used in accordance with the provisions of a memorandum effected as of this same date, with reference to the construction of the Robert Hull Fleming Museum of Fine Arts Building;
>
> "That the payments monthly to said Miss Katherine Wolcott's order shall be a first charge and lien upon the net tuition receipts of said University of Vermont and State Agricultural College."

Miss Wolcott, who lives in Chicago, was apprised of this action by the University. On October 1, 1929, her attorneys wrote to President Bailey as follows:

> "Pursuant to the direction of Miss Katherine Wolcott, we forward you herewith her pledge to the University of Vermont and also a draft of suggested life annuity bond, which we trust will meet the approval of Mr. Austin. Some slight revisions have been made in the form of bond submitted by Mr. Austin, and we would be pleased to have you ask him to inform us if he has any further revision to suggest in connection therewith."

The pledge referred to in this letter, and which accompanied it, is dated October 1, 1929, and is signed by Miss Wolcott. It is directed to the University of Vermont, and reads as follows:

> "You have informed me that you have received a pledge of the sum of $100,000 from James B.

Wilbur upon condition that you receive before October 10, 1929 the pledge of the further sum of $200,000, which is to be used in the building of a museum on the grounds of the University of Vermont, to cost not less than $300,000. You have advised me further that you have secured the pledge of the further sum of $50,000 to be used in the building of said museum.

''I hereby agree to give and transfer on or before January 1, 1930, to The University of Vermont and State Agricultural College securities and/or cash having a market value upon the date of said transfer of not less than $150,000. These securities and cash will be given to you upon the following terms and conditions:

''1. The University of Vermont and State Agricultural College shall execute a life annuity bond, under the provisions of which the sum of $625 per month will be payable to me commencing on the first of the month after the receipt of all of said securities and cash and continuing so long as I shall live. The form of this bond shall be as submitted by my attorneys herewith, or in such other form as shall be approved by them.

''2. The University of Vermont and State Agricultural College shall agree to erect and complete at a location approved by me, before July 1, 1931, at a cost of not less than $300,000, a museum to be known and designated in perpetuity as the 'Robert Hull Fleming Museum' and said building shall be erected in accordance with plans and specifications which I shall approve. I shall have the right to select any one of the rooms in said building which shall be known as 'The Fleming Room,' and to select and arrange all of the objects that may be exhibited therein.

''3. In the event that the museum building shall not be erected and completed as aforesaid, or if any one of the foregoing conditions shall not be met, or in the event that at any time the payments hereinbefore provided shall not be made, then The

> University of Vermont and State Agricultural College shall be obliged to pay to me forthwith the sum of $150,000, and the life annuity bond shall be cancelled.''

At a meeting of the executive committee of the University of Vermont and State Agricultural College held on October 16, 1929, a resolution was passed appointing Continental Illinois Bank and Trust Company of Chicago, Illinois, its agent to receive from time to time any securities that Miss Wolcott might deliver to it for the University, and to forthwith sell the same at the market and remit the proceeds to the University.

At this meeting the committee adopted the definitive form of a life annuity bond, dated October 1, 1929, to be executed and delivered to Miss Wolcott upon delivery by her to the above-named bank of the securities she agreed to give to the University. The University of Vermont and State Agricultural College bound itself, its successors and assigns, by this bond to pay $150,000 to Miss Wolcott ''alone.'' The condition of the bond is as follows:

> ''WHEREAS, said Katherine Wolcott has given outright to the University of Vermont and State Agricultural College for the University of Vermont, securities of the market value of One Hundred Fifty Thousand Dollars to be the absolute property of said corporation founded in 1791 and to be used in accordance with the provisions of a memorandum dated October 1, 1929, with reference to the construction of the 'Robert Hull Fleming Museum' building; and
>
> ''WHEREAS, this gift is made upon all of the conditions set forth in said memorandum dated October 1, 1929, and in consideration that said Corporation shall pay to the order of said Katherine Wolcott during her natural life, the clear annual sum of Seven Thousand Five Hundred Dollars, free from charges for exchange at any bank that she may designate in the United States, in monthly payments of Six Hundred Twenty-five Dollars each;

"Now THEREFORE, if the above bounden, the University of Vermont and State Agricultural College and the University of Vermont, and the sucsor or successors of them or any of them, shall fully perform all of the conditions and obligations set forth in said memorandum dated October 1, 1929, and shall well and truly pay or cause to be paid to the order of said Katherine Wolcott during her natural life, the clear annual sum of Seven Thousand Five Hundred Dollars, free from charges for exchange at any bank she may designate in the United States, in monthly payments of Six Hundred Twenty-five Dollars commencing with the first day of November, A. D. 1929, and ending with the monthly day of payment next preceding her decease, then said obligation is to be void, but if default shall be made in the performance of all of the conditions and obligations set forth in said memorandum dated October 1, 1929, or in the paymen of said annual sum, or any part thereof, at any of the times aforesaid, then said obligation to pay the sum of One Hundred Fifty Thousand Dollars to said Katherine Wolcott is to remain in full force.

"Said monthly payments shall be a first charge and lien upon the net tuition receipts of said University of Vermont and State Agricultural College and the University of Vermont."

The "memorandum dated October 1, 1929," referred to in the bond, is Miss Wolcott's letter of that date, which we have quoted.

On December 16, 1929, Miss Wolcott wrote to the University asking for its approval of her fulfilling her pledge in a way somewhat different from that specified in her letter of October 1, 1929, and in the resolution of the executive committee of October 16, 1929.

The last three paragraphs of this letter are as follows:

"3. I understand that if my pledge is paid as outlined above, the annuity bond referred to in the

agreement of pledge dated October 1, 1929, will be issued as of January 1, 1930, and the first payment thereunder will be made to me on February 1, 1930.

"4. I understand that after said securities shall have been delivered by me to the Continental Illinois Bank and Trust Company, as your agent, I shall have no right, title or interest therein of any kind or nature whatsoever.

"5. This letter is to be considered as supplementing my letter to you of October 1, 1929, and shall not be considered as changing any of the obligations of the University as therein set forth."

At a meeting of the executive Committee of the University of Vermont and State Agricultural College held on December 20, 1929, it was voted to accept and adopt the provisions of Miss Wolcott's letter, and the Continental. Illinois Bank and Trust Company was appointed its agent to receive, hold, and sell the securities delivered to it by Miss Wolcott for the University, and to remit the proceeds, all according to the provisions of such letter.

Miss Wolcott's pledge was fully paid on January 2, 1930, and on that date the annuity bond, hereinbefore set forth, was delivered to her "according to the vote of December 20, 1929."

The specific claims of the defendant that the additional sum of $200,000 was not raised on or before October 10, 1929, are: "1. Only about $50,000 was raised by the Wolcott offer; 2. The conditions attached made the pledge inconsistent with the Wilbur offer and the requirement that the sum be raised."

The court made the following findings relative to the first claim:

"25. The full sum of the capital of said gifts was expended in the erection of said museum, and said museum now represents said capital, which is not a fund, the income of which should be appropriated to the payment of any annuity or to any other use. All of this accords with the intent of Mr. Wilbur in making the promise sought to be enforced.

"26. We find that the principal object of Mr. Wilbur's gift was the erection of a museum on the

grounds of the University of Vermont which would cost not less than $300,000 and that this object has been fully accomplished by the service of the plaintiff which was induced by the promise of Mr. Wilbur.

"29. Monies raised by the plaintiff on the annuity plan for the purpose of expenditure in the building of a museum on the grounds of the University of Vermont according to Mr. Wilbur's gift should not be, and they are not, reduced to a present worth as in insurance companies required by law to maintain reserves for paying or reinsuring annuities.

"30. The value and amount of each subscription is accounted at one hundred per cent. of its face according to the intent of Mr. Wilbur and of the other donors."

The museum was built and completed before July 1, 1931, at a total cost of $313,287.24.

■ ■ The substance of one of the grounds of exception to findings 25, 26, and 29 is that they are contrary to the facts and the law, in that the "moneys received subject to the payment of annuities can have no value beyond the amount received, less the present worth of the amounts the recipient is bound to pay."

It appears that Miss Wolcott was born April 8, 1880, and that, according to the American Experience Tables of Mortality, her expectancy of life is $21\frac{1}{4}$ years.

Henry Hollister Jackson, a witness called by the defendant, is an actuary in the National Life Insurance Company of Montpelier. He testified that the cost to a woman born April 8, 1880, of an annuity contract from an insurance company to pay her $625 monthly, commencing November 1, 1929, for the remainder of her life, would be from $114,000 to $120,000, depending upon the company from which it was purchased; that the present worth of such an annuity, at a constant rate of five per cent., would be approximately $99,000.

The defendant argues that since it appears from the uncontradicted testimony of Mr. Jackson that the value on October 10, 1929, of a promise by the University to pay Miss Wolcott the annual sum of $7,500 in monthly installments of $625, during

her lifetime, was about $100,000, that is, if the University had purchased such an annuity for her from an insurance company, it would have cost about $100,000, therefore her gift was actually about $50,000, and the $200,000 was not raised, as the University had to "raise" voluntary donations with a present worth of $200,000.

Mr. Jackson did not testify as to the value of the promise of the University to pay the monthly sum of $625 to Miss Wolcott during her lifetime. He testified only as to the cost of an annuity contract with a life insurance company for the payment by it of a monthly sum of $625 to a woman of Miss Wolcott's age during her lifetime, and the present worth of the same at a constant rate of five per cent. "An annuity contract is an obligation to pay the annuitant a certain sum of money at stated times during life or a specified number of years in consideration of a gross sum paid for such obligation." *Town of Hartland* v. *Damon's Estate,* 103 Vt. 519, 531, 156 Atl. 518, 523.

It is apparent from the testimony of Mr. Jackson of the cost of such an annuity contract, that the payment of an annuity of $7,500 in monthly installments must be made in part, at least, out of the gross sum paid for such obligation; and the law of this State (G. L. 5593, III, IV) requires life insurance companies making annuity contracts to hold funds in secure investments to a certain amount to provide for the payment of future annual payments due on such contracts.

But we are not concerned in this case with such annuity contracts, but with a valid, enforceable promise, fulfilled by delivery, to give a certain sum of money to be expended for a certain purpose in consideration that the donee will pay to the donor a certain annual sum during the lifetime of the latter. The defendant has not called any facts or law to our attention which compel us to hold that such a fulfilled promise shall be reduced to a present worth, or valued, for the purpose for which it was made, at a sum less than its face value.

We include in our further consideration of the legal nature and effect of the transaction between the University and Miss Wolcott all of the conditions specified in her pledge or "memorandum" dated October 1, 1929.

In addition to the condition in such memorandum that the College shall execute a life annuity bond to Miss Wolcott, under the provisions of which it will pay to her $625 monthly during

her lifetime, the form of the bond to be approved by her attorneys, there is a second condition that the University ''shall agree to erect and complete at a location approved by me, before July 1, 1931, at a cost of not less than $300,000, a museum to be known and designated in perpetuity as the 'the Robert Hull Fleming Museum,' and said building shall be erected in accordance with plans and specifications which I shall approve. I shall have the right to select any one of the rooms in said building, which shall be known as 'The Fleming Room,' and to select and arrange all of the objects that may be exhibited therein.''

The defendant contends that the transaction was an offer by Miss Wolcott to give $150,000 if, among other things, she received a bond of the University to pay $625 monthly to her during her lifetime, and to return the whole of her $150,000 to her if the University failed to comply with all and any of the conditions specified by her. This contention cannot be sustained because her gift was not made subject to any conditions, precedent or subsequent, which would defeat it if the University failed to comply with them; and the bond does not provide for the return of the principal of her gift if the University fails to comply with the conditions specified in her memorandum.

The defendant also contends that the conditions specified in the memorandum made the pledge of Miss Wolcott inconsistent with the offer of Mr. Wilbur and his requirement that the additional $200,000 be raised on or before October 10, 1929. The argument of the defendant is that, because of the conditions specified in the memorandum, the pledge of Miss Wolcott was neither absolute and unconditionally binding nor free from dependency upon her own will for its performance.

The defendant assumes, in making this argument, that the transaction of Mr. Wilbur with the University was an offer to give $100,000 for building a museum and that the condition attached to the offer was a condition precedent to his liability; and it cites and relies upon several cases in which an offer or promise to pay money for a certain purpose was made upon condition that certain other sums of money be raised or acts done, and where it was held that the condition was a condition precedent and the offer or promise could not be enforced at law unless it appeared that there was an absolute and unlimited fulfillment of the condition. But this case does not come within the authority of these cases. We have already held that Mr. Wilbur's

transaction was not an offer to give $100,000, but it was an executed gift of securities of the value of $100,000 subject only to a condition subsequent.

It is not questioned that the University accepted Miss Wolcott's gift, subject to the conditions specified in her memorandum, on or before October 10, 1929, although delivery was not to be made until a subsequent time. The University, by its acceptance, agreed to execute the life annuity bond, to erect and complete the museum before July 1, 1931, to designate the museum in perpetuity as the "Robert Hull Fleming Museum," that the museum should be located at a place, and built according to plans, approved by her, and that she should have the right to select a room in the building and to select and arrange all the objects that might be exhibited therein; and it thereby assumed the duty to go forward with performance.

The assumption of such duty by the University was an adequate consideration for the promise of Miss Wolcott, and her promise thereby became an obligation which legally bound her to pay and which was enforceable at law. *Troy Academy* v. *Nelson,* 24 Vt. 189; *Eastern States, etc.* v. *Vail's Estate,* 97 Vt. 495, 124 Atl. 568, 38 A. L. R. 845; *Allegheny College* v. *National Chautauqua Bank of Jamestown,* 246 N. Y. 369, 159 N. E. 173, 57 A. L. R. 980. It appears from what we have hereinbefore said as to the meaning of the word "raise" when applied to "raising" money, that this obligation of Miss Wolcott was money "raised" within the terms of the condition of Mr. Wilbur's gift.

It appears from the findings that when Miss Wolcott delivered securities and cash of the value of $150,000 to Continental Illinois Bank and Trust Company, the agent of the University, for the University, she relinquished all right, title, and interest therein and power of control over the same, and she intended that the absolute title and right of possession should vest in the University. The transaction constituted an executed gift of such securities and cash which is irrevocable.

The law is well settled that where there is an executed gift of money or securities, the mere fact that the donor requires the donee to pay, and secure the payment of, interest to him for life on the sum given will not defeat it as a gift, because the payment of such interest is not an act which necessarily precedes the vesting of an estate or right, but rather accompanies or follows it; and the reservation operates only as a covenant

on the part of the donee to pay the interest. *Howard* v. *Hobbs,* 125 Md. 636, 641, 94 Atl. 318; *Green* v. *Redmond,* 132 Md. 166, 169, 103 Atl. 431; *Miller et al.* v. *Western College of Toledo,* 177 Ill. 280, 52 N. E. 432, 433, 42 L. R. A. 797, 69 A. S. R. 242; *Doty* v. *Willson,* 47 N. Y. 580; *Young* v. *Young,* 80 N. Y. 422, 36 A. R. 634; *In re Nesbit's Will,* 139 App. Div. 1, 123 N. Y. S. 414, affirmed 199 N. Y. 569, 93 N. E. 1135; *Gould* v. *Van Horne,* 43 Cal. App. 145, 187 Pac. 35.

*Miller* v. *Western College of Toledo, supra,* was an action by the College against the estate of Mary Beatty on a note executed by her to the plaintiff for the erection of a building. The appellants, executors of her estate, had filed three certificates executed by the College as a set-off to its claim. It was stated in each of the certificates that the deceased had deposited with the College the sum specified therein "for the benefit of, and to become and be the property of, said * * * College," and to be used as the board of trustees thereof might direct, in consideration of the agreement on the part of the College to do certain specified acts, and also to pay her an annuity amounting to 7½ per cent. per annum upon the sum mentioned in the certificate during her lifetime.

The appellants contended that the certificates showed a mere conditional gift which was not executed in the lifetime of the donor; that there was no gift *in praesenti* of the money named in the certificates because of the conditions annexed to the proposed gift; and that the donor could revoke the gift because it was not absolute, and that the death of Mrs. Beatty did revoke it.

The court, when refusing to assent to this contention, said: "We are of the opinion that, in the present case, there was an executed gift to the college of the moneys named in the certificates, and that the reservation of an annuity to be paid to the donor did not invalidate the gift. The certificates were merely written evidence of the transaction, and the money having been delivered to the college, the delivery of the certificates to the college was unnecessary. The absolute character of the gift is not in any way affected by the fact that such certificates were retained by the donor, Mrs. Beatty. We concur with the Appellate Court (*Miller* v. *Western College of Toledo,* 71 Ill. App. 587), when they say in their opinion delivered in the decision of this case: 'The deceased accepted the certificates

and thereby bound herself by the terms thereof, and is given by them only a right of action against the appellee for the annuities in case of nonpayment. The title to the money is effectually vested in the college, and to be used by it, thereby placing it beyond her power to reclaim.' ''

In *Doty* v. *Willson, supra,* Chief Judge Church said: ''It is undoubtedly a general rule that the donor must part with all interest and control over the property; but I can find no authority, nor can I see any reason for the doctrine, that a promise made by the donee to pay a sum of money or do an act not amounting to a condition of delivery or title can invalidate the gift. If this was a gift of the $3,000, the title and control of the money immediately vested in the donee, and his promise to pay the donor six per cent. in no degree affected such title or control. * * * * The donor could never recover back the principal, nor in any manner control it. * * * * A condition attached to the delivery would invalidate a gift, but a promise of the donee, not constituting a condition of delivery, or title, but consistent with it, will not have that effect.''

It appears from the memorandum dated October 1, 1929, that Miss Wolcott intended that the performance of the conditions specified therein should be secured by the annuity bond, and it is so secured. It is stated in the bond: ''if the University * * * * shall fully perform all of the conditions and obligations set forth in said memorandum dated October 1, 1929, * * * *, then said obligation is to be void, but if default shall be made in the performance of all the conditions and obligations set forth in said memorandum, then said obligation * * * * is to remain in full force.''

Since none of the conditions specified in the memorandum amount to a condition of delivery or title, it appears clearly that the absolute character of Miss Wolcott's gift is not in any way affected by them. When she accepted the annuity bond executed by the College, she bound herself by the terms thereof; and she is given by it only a right of action against the University if it defaults in the performance of all such conditions, or a resort to the net tuition receipts in case of nonpayment of the annuity.

The defendant also argues that the University did not receive the full amount of Miss Wolcott's gift for building the museum, and it cannot know the net amount of the gift for

that purpose until she dies, because the evidence shows that the annuity plan is based upon the theory that what is paid to the donor by the donee is part of the principal that was given. While this theory may be applied in some instances for some purpose, such as taxation, it cannot be applied in this case where it appears clearly that no part of the principal of her gift can be used in making the monthly payments to her. We are now dealing with facts and not with theories. No fund was created of the $150,000 given by Miss Wolcott, but, on the contrary, it was to be used in building the museum, and all of it was used for that purpose. It was provided that the monthly payments to her should be made out of current revenue, and not out of the capital of her gift. The security given for such payments is not a charge upon the capital of the gift nor upon the museum, but is a first charge and lien upon the net tuition receipts. The liquidated damages are not secured at all and they cannot be charged upon the museum. There are no conditions subsequent making the gift defeasible as the provisions of the bond prevent a forfeiture of the estate granted.

Finding No. 28 is as follows:

> "Mr. Wilbur donated his stocks and executed the note in question with full knowledge that the annuity plan for raising funds was employed by the plaintiff, and he approved of such method, used it himself in giving to the University on a previous occasion, and recommended its use to others."

The defendant excepted to this finding on several grounds, but it is necessary to consider only one, as the other grounds are waived by the concession of the defendant where it says in its brief: "It is the fact and the testimony shows that the University of Vermont and other colleges and institutions raise money by the so-called annuity method, and Mr. Wilbur knew of it, used it himself, and recommended its use to others." While it is not stated in the concession that Mr. Wilbur approved of this method of raising money, that fact is fairly to be inferred from the statement, "he used it himself, and recommended its use to others."

The ground of exception we consider is "that Mr. Wilbur did not donate his stocks, or any stocks, but only a promise to

pay on fulfillment of conditions stated by him.'' This exception is disposed of by our holding that there was an executed gift of his securities subject only to a condition subsequent.

 The rule is that this Court will presume in favor of the judgment that the court below inferred such facts from those certified up as it ought to have inferred, or it fairly might have inferred. *Labor* v. *Carpenter*, 102 Vt. 418, 422, 148 Atl. 867.

We think it can reasonably be inferred from the facts found in finding 28 and the concession of the defendant that Mr. Wilbur intended that money raised by the University by the so-called annuity method would comply with the condition of his gift; and, in support of the judgment, we presume that the court below inferred that fact from the facts found.

For the reasons we have stated, the exceptions to the findings we have referred to and the other findings relating to Miss Wolcott's gift and the exceptions to the failure of the court to find in compliance with the requests of the defendant are not sustained.

 The defendant excepted to the findings as to the legal status of the plaintiff and to the finding as to a custom and correct accounting method for colleges to carry funds donated by the annuity plan in their assets, and also excepted to the admission of certain evidence on which these findings are based.

None of these findings are material, they have not been considered by us, and they can be rejected without affecting the result. It is our rule that exceptions to immaterial findings will not be considered. *Platt, Admx.* v. *Shields et al.*, 96 Vt. 257, 268, 119 Atl. 520; *McClary* v. *Hubbard*, 97 Vt. 222, 240, 122 Atl. 469; *Houghton* v. *Grimes*, 103 Vt. 54, 65, 151 Atl. 642.

In view of the grounds on which our decision is based, it is not necessary to consider other questions that have been briefed.

*Judgment affirmed. To be certified to the probate court for the District of Manchester.*