Baker v. Poljacik, No. 210-3-11 Rdcv (Teachout, J., Dec. 6, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 210-3-11 Rdcv** |

**ALICE BAKER,**
        **Plaintiff**

v.

**HILLARY POLJACIK BAKER,**
**MICHELE POLJACIK, and**
**ERIC BAKER,**
        **Defendants**

### DECISION
### Findings of Fact, Conclusions of Law, and Order

This matter came before the Court for final hearing on November 29, 2011. Plaintiff was represented by Attorney Jonathan C. Heppell. Her attorney-in-fact, Ronald G. Baker, attended. Defendants Hillary Poljacik Baker and Michele Poljacik attended and represented themselves. No proof of service was ever filed concerning Eric Baker, who was dismissed from the case at the hearing, although he was present to testify as a witness. Based on the credible evidence, the Court makes the following Findings of Fact, Conclusions of Law, and Order.

Findings of Fact

Alice Baker owns property at 383 Stratton Road in Rutland City (hereinafter 383 Stratton), where she lived until recently. It is the last lot in the City limits on Stratton Road. She also owns an adjacent lot at 495 Stratton Road in Rutland Town, which is the first lot in Rutland Town and the subject of this lawsuit (495 Stratton). She is the mother of Ronald G. Baker, who currently lives at the 383 Stratton Road property and is her attorney-in-fact, and she is the grandmother of Ronald's son Eric Baker.

At some time in the late 1970's, Alice permitted Ronald to put a trailer on the lot at 495 Stratton. The City permitted a hookup to City water and sewer, even though the lot is in Rutland Town, and for many years there has been a water and sewer account for 495 Stratton separate from that for 383 Stratton; the account is in the name of the lot owner, Alice Baker. Ronald lived in the trailer for a time, and then it was empty for several years as Ronald lived elsewhere.

Alice and Eric were close. Starting in 1999, Alice permitted Eric to live at the trailer. Later, Hillary Poljacik joined him and they lived there together for about two years. They had a child together. In early 2005, Alice gave a ten-year rent free lease of the lot at 495 Stratton to Eric and Hillary to provide a site for a home for Eric and Hillary and their child. She went with

them to the Town Clerk's Office and on March 17, 2005 she signed and had notarized a lease document that reads as follows:

> I, Alice Baker of 383 Stratton Road, Rutland, Vermont 05701 am the owner of this property and of the lot next door which is 385 Stratton Road, Rutland, Vermont.
>
> It is my wish to grant a ten year lease of this property at 385 Stratton Road to my grandson, Mr. Eric Baker and his wife-to-be Hillary Poljacik for the purpose of having a mobile home there that serves as their residence which is shared by their daughter and my Great Granddaughter, Abigail Lorraine Baker.
>
> This shall be a rent free lot for them.

Eric was to pay the water and sewer bill, which remained in Alice's name, by making the payments of the bills to Alice.[1]

At about the same time, Hillary's mother, Michele Poljacik, arranged to buy a new trailer to put on the lot for the young family. She purchased and financed the new trailer, but Eric agreed to pay monthly rent of $500, and to pay the property taxes. It was his expectation that when it was paid off, Michele would give ownership to Eric and Hillary, but there was no question that Michele was the owner. The day after Alice signed the lease, she also signed a document for the benefit of the mortgage holder on the trailer stating that no rent was due and that she would not put a lien on the trailer.

Eric and Hillary lived in the new trailer, and fulfilled the agreements to both Alice and Michele. They were married in October of 2005, and they had a second child. Eric worked and supported the family, and Hillary took care of the children. At some point, Hillary developed an addiction to prescription medication. She went to rehab, and the parties worked on making their marriage successful. Hillary relapsed, and Eric decided to move out.

In March of 2010, Eric moved out and lived temporarily with Alice. At that time, he was behind on the water and sewer payments, and also behind on property taxes. The children stayed with Hillary in the trailer until the end of the school year. In mid-June, after school ended for the summer, Eric took the children to where he was living in Whitehall, New York. Hillary continued to live in the trailer, and the children spent time with her there. Hillary spent some days away from the trailer when the children were not with her, sometimes staying with her boyfriend for a week at a time, but she maintained the trailer as a residence.

In late June, Eric decided to try to move back to the trailer and attempt to resume living with Hillary and the children as a family. He intended to live there permanently, and brought his race car and moved some of his own furniture in, including a new sofa. The parties sold their old sofa to a friend of Eric's to make room for the new one. Eric moved back in with the children on June 29, 2010. After a few days, he determined that the relationship was not going to work, and

---

[1] It is unclear why the lease identifies the lot as 385 Stratton Road whereas it is otherwise identified in the case as 495 Stratton Road, but there is no dispute as to the identity of the lot.

he moved out again on July 4th, taking the children with him. On July 5th, he moved out the few items of furniture he had brought to the trailer and took his race car, but left the trailer fully furnished for Hillary, whose residence it became.

On July 6, 2010, the City sent a letter regarding the overdue water and sewer bill. Ronald Baker, who was living next door with his mother Alice, received this notice. He had hostility toward Hillary and toward the Poljacik family generally, which had lived in the area for many years. He was unhappy with Hillary's behavior at the trailer throughout the spring. He had seen police come to the trailer and believed that she was involved in drug activity at the trailer. He resented Hillary's treatment of a dog that was often left alone in the trailer for hours, and he had given it water and food on occasion. In addition, his father had promised him that the lot would be his someday, and he was not happy with Hillary residing there but spending time elsewhere.

On July 6, 2010, the same day, without warning or asking anyone to pay the bill, Ronald arranged for the water to the trailer to be shut off by the City on the next day, July 7th. The trailer was still furnished as Hillary's residence, and her dog was still there. Ronald had received no notice that Hillary ceased to maintain the trailer as her residence. When Michele came by a few days later, Ronald told Michele that the reason he had done so was that there was a heat tape problem under the trailer. Michele called a plumber to come and check it, but nothing was found to be wrong. At trial, Ronald testified that he had the water shut off because Hillary was not living there any more. The Court finds that Ronald was eager to have Hillary leave the trailer, and that he concluded on his own that he believed that she was no longer living there, and he therefore had the water shut off.

On July 7th, Eric obtained a Relief from Abuse temporary order against Hillary. The terms are unknown. There is no evidence that there were any restrictions against the children being with Hillary, but even if there were, the order was a temporary ex parte order with a follow-up hearing. There is no evidence that Hillary was precluded from spending time with the children at any time.

The trailer was not usable by Hillary as a residence without water. Hillary stayed with Michele at her home nearby. A few days later, Michele removed a few of Hillary's possessions from the trailer, but it was still set up for living. In early August of 2010, Hillary moved out altogether. The children spent every weekend with her, but the trailer was unusable. She now lives with her mother, but claims the right to live in the trailer as her residence. Ronald has parked vehicles and equipment across the driveway leading to the trailer, preventing access to the trailer. Ronald testified that in the fall of 2010, he "made it very clear that [the trailer] wasn't wanted there." Michele has continued to pay the mortgage and the property taxes on the trailer. Eric paid the property taxes for a time after he left, but stopped paying them at some point.

On September 1, 2010, Eric obtained custody of the children. Eric and Hillary were divorced on November 14, 2011. The order provides for Eric and Hillary to share legal parental rights and responsibilities, for Eric to have physical parental rights and responsibilities, and for the children to spend regular parent-child time with Hillary.

At some point, Ronald paid the water and sewer bill, but Eric also paid a portion of it in an amount that is unknown. Plaintiff seeks compensation for $1,153.16. That is the amount of the outstanding balance on June 30, 2008 (Exhibit 4), but because it is unknown how much was paid by Eric, it cannot be determined how much is due from Eric and Hillary or Hillary for the periods of their residence.

On December 22, 2010, a termination letter was sent by Alice's lawyer to Eric and Hillary notifying them that the tenancy was terminated based on failure to pay the water and sewer bill and abandonment of the property, and giving until February 1, 2011 to remove the trailer. The trailer has not been removed.

Ronald, as attorney-in-fact for his mother, claims that the termination of the tenancy was lawful, and seeks judgment for eviction from the lot at 495 Stratton. He claims that he placed vehicles in the driveway to protect the water.

Hillary claims that she has a continuing right to live at 495 Stratton under the lease, and that Ronald wrongfully evicted her from the trailer by shutting off the water and preventing access. She claims that she has the right to permit her mother's trailer to remain on the premises as she (Hillary) is entitled to possession of the lot under the lease.

Michele claims that she has permission from Hillary, who holds the lease, to maintain the trailer on the lot. She claims that if Hillary does not want to live there, Hillary nonetheless holds the lease, and can give Michele permission to rent the trailer to someone else, but that Ronald is blocking access.


Conclusions of Law

The first issue is whether Hillary has a right to possession of the lot under the lease, or whether Alice has the right to terminate the tenancy as she seeks to do in this lawsuit. The transfer by Alice to Hillary and Eric of a 10-year rent free lease was a gift, given without any compensation. A donor may give a gift, including a gift of real property, with the condition that the property be used for a particular purpose. 38 Am. Jur. 2d *Gifts* § 67. Whether a gift is absolute or conditional is a question of the donor's intent at the time the gift is given, as determined by the expressed declaration of the donor. *Id.* A conditional gift may be revoked if the condition ceases to be met. In the case of a gift of land, the land reverts to the owner if the condition is not satisfied. *Id.* However, the donor's mere disappointment with the use of the land is not sufficient to revoke the gift so long as the condition is satisfied. See also *Univ. of Vt. V. Wilbur's Estate,* 105 Vt. 147 (1933) (recognizing the right of a donor to give a gift that was revocable upon the failure of a condition).

The Court concludes that Alice gave Eric and Hillary a conditional gift of a ten-year rent-free lease, the condition being that it be used as a residence for them and their children (her grandchildren). If and when the condition is not met, the land reverts to Alice. The primary purpose of the gift, as expressed in the language of the lease, was to provide a home where the grandchildren could reside with their parents as a family. Upon the separation of Eric and

Hillary, the condition would, and does, continue to be satisfied as long as one or the other of them resides in the trailer and exercises parental rights and responsibilities in a home on the premises.

When Ronald turned off the water on July 7, 2010, he had no right to do so, as Hillary was continuing to reside at the trailer, and it was her home for spending time with the children. It was furnished as her home and she maintained no other residence, and even if she did not spend every night there, it was her residence. Even if she could not spend time with the children temporarily under an ex parte Relief from Abuse Order, that was a short-term temporary order, and not sufficient grounds for termination of the tenancy. Ronald's acts of turning off the water, thereby making the trailer uninhabitable, and later parking vehicles across the driveway to block access, were in derogation of Hillary's right to possession under the lease, and amounted to an illegal eviction as defined in 9 V.S.A. § 4463:

> **Illegal evictions**
> (a) No landlord may willfully cause, directly or indirectly, the interruption or termination of any utility service being supplied to the tenant, except for temporary interruptions for emergency repairs.
> (b) No landlord may directly or indirectly deny a tenant access to and possession of the tenant's rented or leased premises, except through proper judicial process.

9 V.S.A. § 4463.

Plaintiff later sought to evict Hillary and Michele by judicial process in this case on grounds of lack of payment of water and sewer bill and abandonment of the property. However, Plaintiff has not shown that there is an unpaid portion of the water sewer bill that Eric did not pay for the period prior to the illegal eviction. Moreover, Plaintiff has not shown abandonment of the premises, as the evidence shows that Hillary was evicted illegally from possession of the lot. Therefore, Plaintiff's claim for return of possession fails.

It should be noted that under this analysis, Hillary has the right to return to the trailer to live there as her residence as long as the children spend time with her there during her parent-child time, but if she does not use it as a residence for herself and the children when they are with her, then Alice has the right to declare the condition no longer maintained, and to revoke the conditional gift of the lease. In other words, Hillary may not maintain a different residence and give permission to Michele to rent out the trailer to a third party. The 10-year lease can only be maintained if either Hillary or Eric live there, with the children spending parent-child time there with one of them as the resident parent.

Hillary and Eric were obligated to maintain the water and sewer bill while they or one of them occupied the lot as a residence. This obligation continued up to July 7, 2010, the date of the illegal eviction. Plaintiff has brought a claim for compensation for amounts due, but the evidence was not sufficient to show an amount attributable to that period that was not already paid by Eric. Thus Plaintiff has failed to prove by a preponderance of the evidence that Hillary owes the amount claimed.

5

**ORDER**

For the foregoing reasons,

1.  Judgment is entered for Defendants Hillary Poljacik Baker  and Michele Poljacik on Plaintiff's claim for eviction.

2.  Judgment is entered for Defendants on the claim based on the water and sewer bill.

3.  The request for an order that the trailer be removed is denied, as Hillary is entitled to continued possession of the lot for purposes of a residence for herself, to share with the children when they are with her.

4.  Plaintiff's claim for lot rent is dismissed.

Dated at Rutland, Vermont this 6th day of December, 2011.

_____
Hon. Mary Miles Teachout
Superior Judge